CHARLES W. FLYNN & others *vs*. CIVIL SERVICE COMMISSION
& others
(and a companion case[1]).

Suffolk.  December 17, 1982. — January 26, 1983.

Present: PERRETTA, ROSE, & DREBEN, JJ.

*Civil Service*, Oral examination, Promotion, Arbitrary or capricious action. *Metropolitan District Commission*.

In selecting candidates for promotion to the position of sergeant, the Metropolitan District Commission did not violate G. L. c. 31, § 16, by conducting interviews in which a three-member panel posed questions to the candidates from a standard list prepared in advance, evaluations were based on a predetermined list of criteria and the candidates were graded numerically on scoring sheets.  [208-209]

Lack of technical compliance with Civil Service Rule 15 (1978) by the Metropolitan District Commission in making nineteen appointments from the first thirty-nine persons on a list certified by the Division of Personnel Administration did not invalidate the appointments where the same promotions would have been made had the commission meticulously followed the rule.  [209-210]

Although the scoring procedure used by the Metropolitan District Commission in assessing the work records of certain candidates for promotion to sergeant in some instances did not directly follow the procedure described in the statement of reasons given by the commission in a letter to the Division of Personnel Administration, there was no evidence of any arbitrary or capricious action by the commission in making the appointments.  [210-211]

CIVIL ACTIONS commenced in the Superior Court Department on June 23, 1980, and April 15, 1981, respectively.

The cases were heard by *Pierce, J.*

*Marshall F. Newman* for Charles W. Flynn & others.

*Gabriel O. Dumont, Jr.*, for Peter Mantos & others.

*Maureen L. Fox*, Assistant Attorney General, for the defendants.

---

[1] Peter Mantos & others *vs*. Civil Service Commission & others.

DREBEN, J.  Two groups of candidates bypassed for promotion to the position of sergeant brought actions in the Superior Court under G. L. c. 249, § 4, to review a decision of the Civil Service Commission (commission) upholding the administrator's approval[2] of the procedure followed by the Metropolitan District Commission (MDC) in making nineteen promotions.  We affirm the judgments which, in turn, sustained the decision of the commission.[3]

Under G. L. c. 31, § 27, inserted by St. 1978, c. 393, § 11, if an appointing authority makes a promotional appointment "other than the person whose name appears highest" on the eligible list of candidates, a list based on examination (see G. L. c. 31, § 25), it must file with the administrator "a written statement of [its] reasons for appointing the person whose name was not highest."  The MDC explained its reasons for not choosing the names of the persons highest on the list and outlined its procedure in a letter to the administrator dated May 7, 1980.  The explanation was accepted by the administrator and, on appeal pursuant to G. L. c. 31, § 2(b), by the commission.

The bypassed candidates challenge the selection process of the MDC on three grounds:  (1) an unauthorized oral examination was given by the MDC; (2) the MDC violated G. L. c. 31, §§ 25 and 27, and Civil Service Rule 15 (1978); and (3) the record before the commission shows that the

---

[2] The administrator is the personnel administrator of the Division of Personnel Administration, G. L. c. 31, § 1, and a defendant in this action.

[3] The parties suggest that the standard of review to be applied is the one set forth in *Commissioner of Rev.* v. *Lawrence,* 379 Mass. 205, 208 (1979), a case which, unlike this one, involved an appeal from a decision under what is now G. L. c. 31, § 44.  That statute sets forth specific criteria for the court originally reviewing a commission's decision as to discharge, removal, or suspension, and states that the action of such court shall be final.  Compare *Goldblatt* v. *Corporation Counsel of Boston,* 360 Mass. 660, 663 (1971).  We need not, however, consider what is the appropriate standard of review, see *McSweeney* v. *Town Manager of Lexington,* 379 Mass. 794, 800 (1980); *Caswell* v. *Licensing Commn. for Brockton,* 387 Mass. 864, 877 (1983), because under any of the standards enunciated as proper in a certiorari proceeding, the judge was correct in sustaining the action of the commission.

MDC acted arbitrarily and did not follow the procedures set forth in its letter of May 7, 1980.

1. *Oral "examination."* As pointed out in the decision of the commission, the civil service selection process is in two parts: first the screening and ranking of candidates on the basis of examination by the Division of Personnel Administration (G. L. c. 31, § 25), and then, further review by the appointing authority of a limited number of candidates who qualify in the ranking process (G. L. c. 31, §§ 25 and 26). The plaintiffs acknowledge that the MDC may, in the exercise of its statutory discretion, conduct oral interviews of candidates. Authority for such interviews is implicit in G. L. c. 31, § 25, fifth par., which requires the appointing authority to submit a written notice to the administrator indicating, among other things, with respect to each person whose name is on the eligible list, whether such person appeared for an interview.

Despite this authority, the plaintiffs claim that the interviews were so highly structured that they amounted to an oral examination in violation of the provisions of G. L. c. 31, § 16. In support of their argument, they stress that a three-member panel posed questions to the candidates from a standard list prepared in advance, that evaluations were based on a predetermined list of criteria and that the candidates were graded numerically on scoring sheets.

We find no violation of G. L. c. 31, § 16. That section is addressed to the examination given by the administrator and not to interviews conducted by the appointing authority. Moreover, as both the commission and the Superior Court judge noted, the interviews were structured in an attempt to protect candidates from arbitrary action and undue subjectivity on the part of the interviews. Indeed, an expert witness testified that it was preferable for an appointing authority to use a numerical system in its interviews because "[t]he clearer and more explicit [the] procedures are, the better they are likely to be." There is nothing in the record before the commission to suggest that the interview process was a pretext or an attempt by the MDC to subvert

§ 16, or that the MDC "in the exercise of a sound discretion" did anything other than select "among persons eligible for promotion" and establish permissible procedures for such selections. *Goldblatt* v. *Corporation Counsel of Boston,* 360 Mass. 660, 666 (1971).

2. *Possible lack of compliance with G. L. c. 31, §§ 25 and 27, and Civil Service Rule 15 (1978).* The statutory provisions establish the eligibility list and limit the number of persons that the appointing authority may consider in making a specific appointment or promotion. Although the plaintiffs allege noncompliance with the statute, the focus of their claim concerns rule 15(1) of the commission. That rule, set forth in the margin, spells out the details of the selection process.[4]

In making the nineteen appointments from among the first thirty-nine persons as prescribed by rule 15, the MDC engaged in an evaluation process which compared all the candidates. The order of appointment within the list of nineteen was not, however, technically made in compliance with the proviso of the rule. For example, the officer who appeared at the top of the selection list of the MDC was not among the three candidates whose names appeared first on the certified list. Nevertheless, if the appointing authority, using the same numerical ratings it gave to each of the thirty-nine persons on the list had made the selections one at a time — the first from among the first three, the second

---

[4] "When names have been certified to an appointing authority under rule 11 and the number of appointments actually to be made is $n$, the appointing authority may appoint only from among the first $2n + 1$ persons named in the certification willing to accept appointment, e.g., when the number of appointments to be made is 1, 2, 3, 4, 5, the appointing authority may appoint only from among the first 3, 5, 7, 9, 11 persons named in the certification willing to accept, provided that when more than one appointment is being made, the first appointment shall be made from among the first three persons whose names are certified and who are willing to accept, the second appointment shall be made from the first five persons whose names are certified and who are willing to accept, the third appointment shall be made from among the first seven persons whose names are certified and who are willing to accept, and so forth.

"For purposes of this section, 'appointments' shall include promotions."

from the first five, the third from the first seven — the same nineteen officers would have been selected. In these circumstances, the commission found that no conflict between the rule "and the system used by the appointing authority actually occurred."[5]

The determination by the commission that rule 15 has not been violated is, of course, entitled to weight. See *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.,* 376 Mass. 480, 491 (1978). Moreover, since the same promotions would have been made had the MDC meticulously followed the rule, any infraction cannot be considered material insofar as the plaintiffs are concerned. Cf. *Goldblatt* v. *Corporation Counsel of Boston,* 360 Mass. at 663; *Commissioner of Rev.* v. *Lawrence,* 379 Mass. 205, 208 (1979). Certiorari does not lie for such an insubstantial defect. *Chick's Constr. Co.* v. *Wachusett Regional High Sch. Dist. Sch. Comm.,* 343 Mass. 38, 41 (1961).

3. *Alleged arbitrary action of the MDC and failure to follow its own procedures.* We have reviewed the plaintiffs' contentions concerning arbitrary assessments by the MDC of the candidates' work records. Although these records were in four parts, the plaintiffs argue evaluation deficiencies only in the attendance and commendation components. As to attendance, the testimony of Captain Pendergast refutes the claim of arbitrariness. While it is true that records beyond the three-year period referred to in the May 7, 1980, letter were examined, what was taken into account were extenuating circumstances such as the fact that an officer in the past had sustained injuries in the line of duty yet had continued to work and that his more recent absences were due to a verified case of mononucleosis. Moreover, even if each discrepancy complained of in the scoring procedure for attendance is adjusted in favor of the plaintiffs, none of them would have the numerical score required for

---

[5] The commission, however, urged that the numerical rating system not be used in the future because of potential conflict with rule 15(1). We have no occasion to consider whether the commission's suggestion showed an excess of caution.

promotion; nor, if downward adjustments were made, would any person who had been promoted have lost enough points to fall below the minimum figure for promotion by the MDC. Thus, the defect, if any, was insubstantial and one which is not material or helpful to the plaintiffs. See *Loranger* v. *Martha's Vineyard Regional High Sch. Dist. Sch. Comm.*, 338 Mass. 450, 459 (1959).

The failure, if any, of the MDC to follow a consistent system in scoring candidates for commendations had a minimal effect on the candidates' over-all scores. In the one case where the score, if adjusted totally in the plaintiff's favor, might have made a difference, there were circumstances which made the score actually given reasonable.

We conclude that although the scoring procedure in some instances did not directly follow that described in the statement of reasons, there is no evidence of any arbitrary or capricious action on the part of the MDC. To the contrary, our study of the record confirms the commission's conclusion that there is "no evidence to show that the appointing authority was motivated by anything other than merit or that its actions were . . . designed to conceal improper reasons."

*Judgments affirmed.*