NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11711


SCOTT SHERMAN  vs.  TOWN OF RANDOLPH & others.[1]



Suffolk.     January 5, 2015. - September 24, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Civil Service, Decision of Civil Service Commission, Eligibility
     list, Findings by commission, Judicial review, Police,
     Promotion.  Police, Promotional examination.
     Administrative Law, Decision, Findings, Judicial review.
     Practice, Civil, Review respecting civil service.




Civil action commenced in the Superior Court Department on
May 18, 2012.

The case was heard by Heidi E. Brieger, J., on a motion for
judgment on the pleadings, and a motion for reconsideration was
considered by her.

The Supreme Judicial Court granted an application for
direct appellate review.


Frank J. McGee for the plaintiff.
Bryan F. Bertram, Assistant Attorney General, for the
personnel administrator of the human resources division of the
Commonwealth.

_____

[1] Civil Service Commission (commission) and the personnel
administrator of the human resources division of the
Commonwealth (administrator).

John Foskett for town of Randolph.

DUFFLY, J.  The town of Randolph (town) decided to bypass the plaintiff, Scott Sherman, and appoint three candidates with lower scores on the police sergeant's examination to its three open police sergeant positions.  Sherman appealed, and, after an evidentiary hearing, a Division of Administrative Law Appeals (DALA) magistrate recommended that Sherman's appeal be dismissed.  The Civil Service Commission (commission) adopted the magistrate's findings and recommendation, and dismissed the appeal, concluding that there was "independent and reasonable justification" to bypass Sherman, although noting serious flaws in the town's interview process.  Sherman sought review of the commission's decision in the Superior Court.  A Superior Court judge denied Sherman's motion for judgment on the pleadings and his motion for reconsideration, and judgment entered for the commission.  Sherman appealed, and we allowed his petition for direct appellate review.

Sherman argues that his bypass was impermissible because the personnel administrator of the Commonwealth (administrator)[2] improperly delegated to the appointing authority its duty under

_____

[2] The administrator is the personnel administrator of the human resources division (HRD) of the Commonwealth, within the Executive Office for Administration and Finance.  See G. L. c. 31, § 1.  In this context, the terms administrator and HRD are largely interchangeable.

G. L. c. 31, § 27, to "receive" statements of reasons for bypasses. He argues also that the town's decision to bypass him in favor of candidates with lower scores on the civil service examination was not supported by a reasonable justification because the commission determined that the town's interview process was "fatally flawed." In Malloch v. Hanover, 472 Mass. (2015), we determined that the administrator permissibly may delegate to an appointing authority its duty under G. L. c. 31, § 27, in light of the broad authority to delegate provided by G. L. c. 31, § 5 (l). Sherman's contention that the administrator could not delegate its authority to the town thus is unavailing. We address Sherman's alternative argument that the town's bypass was not supported by reasonable justification. We agree that the town's procedure for selecting candidates was seriously flawed. With this in mind, we have conducted an extensive review of the record to determine whether the flawed procedure indicated that the town's bypass was motivated by reasons incompatible with "basic merit principles." See G. L. c. 31, § 1 (defining term). We conclude that, in this case, the record did not support the concern that the flawed procedure reflected a departure from basic merit principles, and that there is substantial evidence to support a reasonable justification for the town's bypass. Therefore, we affirm the

Superior Court's denial of Sherman's motion for judgment on the pleadings.

Background. 1. Civil service statute. Police officer positions within the Commonwealth are subject to civil service law, both for initial appointments and for promotions. See G. L. c. 31, § 58. See generally Note, The Massachusetts Civil Service Law: Is It Necessary to Destroy the Current System in Order to Save It?, 40 New Eng. L. Rev. 1103, 1106 (2006). Applicants for a civil service position must take an objective examination developed by the human resources division (HRD), specifically designed for that particular type of position. See G. L. c. 31, § 16. The goal of the examination requirement is to ensure that employees are appointed or promoted on the basis of their abilities, knowledge, and skills -- in other words, on the basis of merit -- and are not selected arbitrarily or for improper reasons, such as political or personal connections. See G. L. c. 31, § 1.

To achieve this goal, when an appointing authority notifies HRD of an open position, HRD certifies a list of eligible candidates for the position, and ranks the names on the list in order of the scores the candidates received on the relevant HRD examination, with the inclusion of veterans' preferences. See G. L. c. 31, §§ 25-26. Candidates at the top of the list, however, may be bypassed if the appointing authority chooses a

candidate lower on the eligibility list based on reasonable justification. See G. L. c. 31, § 27. If an appointing authority bypasses a higher-ranked candidate, it must submit to the administrator a written statement of the reasons for the bypass, and the appointment "shall be effective only when such statement of reasons has been received by the administrator." Id. The administrator, however, may permissibly delegate to an appointing authority its duty to receive the appointing authority's statement of reasons. See Malloch, 472 Mass. at    . Candidates may challenge an appointing authority's decision to bypass them by appeal to the commission. See G. L. c. 31, § 2 (c).

2. Facts. The commission adopted all of the DALA magistrate's findings of fact. We recite the facts as found by the magistrate, supplemented with facts that have a substantial basis in the record and are consistent with the magistrate's findings. We reserve some facts for later discussion of specific issues.

In June, 2010, the town decided to appoint three permanent, full-time police sergeants and to promote them from within the Randolph police department (department). HRD had certified nine candidates for the position of police sergeant in April, 2010, based on a previously administered promotional examination. Four of those candidates are relevant here: Sherman, who was

ranked highest on the eligibility list, and the three candidates who ultimately bypassed him, whom we shall call Walter Burton, Blair Lewis, and Martin Duval.[3] The candidates had the following certification scores: Sherman (91), Burton (90), Lewis (82), and Duval (81). On June 17, 2010, the town notified the nine candidates of their certification, asking them to indicate whether they would accept a promotion. Sherman, Burton, Lewis, and Duval agreed to accept, and each was informed that he would be interviewed on June 25, 2010.

The department's outgoing chief of police, Paul Porter, established an interview panel to evaluate the candidates. The panel consisted of Porter, Sergeant William Pace (Porter's successor, who became chief of police when Porter retired on July 2, 2010 one week after the interview), Lieutenant John Hamelburg, and Officer Jeff Chaplin. The panel interviewed the nine candidates on June 25, 2010, each for approximately thirty minutes. Each candidate was allowed a brief opening statement and a closing statement. The panel asked each candidate the same eight questions.[4] The panelists were directed to score

---

[3] Scott C. Sherman was a "police officer/school resource officer" assigned to the detective division of the Randolph police department (department); the officers whom we call Walter Burton and Blair Lewis were patrol officers, and an officer whom we call Martin Duval was a safety officer.

[4] The eight questions were the following:

candidates "on the totality of their interview performance," on a scale of zero to five, with five being the highest. Each panelist was allotted fifteen points and, as the magistrate found, was supposed to assign a five to the top candidate, a four to the second-ranked candidate, and so forth, with the fifth-ranked candidate being assigned a one, and the four

---

"1. What personality traits and work ethic would you model for your subordinates? Which trait/ethics are most important and why?

"2. You are the newly appointed sergeant of the Any Town Department. The chief would like to see an effort to increase courtesy and civility in an attempt to reduce citizen complaints and increase satisfaction with the police department. How would you as sergeant further this objective?

"3. If you witnessed an officer using excessive force how would you handle it?

"4. Tell me about a situation where you displayed an ability to lead.

"5. How would you apply the community policing model and philosophy to Randolph, taking into account the demographics of the town and the concepts of multicultural law enforcement and the 2004 Northeastern report regarding the Randolph Police bias-based policing, traffic stop data collection[?] As a set, how would you address these issues?

"6. Do you envision yourself as a leader or supervisor[?] Elaborate.

"7. Integrity is doing the right thing when no one else is watching. How would you handle an officer's transgression that could be dealt with at your level?

"8. There is a saying which goes, if you tell the truth, it becomes part of your past; if you lie, then it becomes part of your future. How would you handle an officer that lies to you?"

bottom-ranked candidates to receive zeroes.[5]  After all the candidates had been interviewed, the panelists voted by a show of hands for each candidate.  Because the panel's scores were not written down, the magistrate reconstructed the scores based on testimony at the hearing.  The final scores were:  Lewis (19), Burton (14), Duval (13), and Sherman (4).[6]

Following the interviews, both Porter and Pace spoke with Lieutenant Detective Arthur Sullivan, the commanding officer of the detectives (who supervised Sherman's supervisors), and learned that Sherman "had difficulty following through on cases" and "needed supervision."  Sherman's supervisor on the day shift, Detective Sergeant David Avery, told Sullivan that Sherman had had "some issues with timely reports being done, timely charges being taken out on individuals and/or arrests being produced in a timely manner."  While Sherman had addressed those issues, he had ongoing issues with incomplete "log items." Sherman's supervisor on the night shift, Detective Sergeant Anthony Marag, reported that Sherman had difficulty following

---

[5] This was the scoring method as described by the magistrate.  There was conflicting testimony about the scoring system actually used, with the former Chief, Paul Porter, providing several conflicting descriptions of how the candidates were scored.

[6] One of the other five certified candidates received a final score higher than Sherman's but below Duval's; the other four candidates scored lower than Sherman.

through on cases,[7] and, three or four times, had had to be reminded about "taking those extra steps in an investigation."[8]

Porter, with input from Pace, concluded that Burton, Lewis, and Duval should be promoted, basing this conclusion on the panel's interview scores; the candidates' conformance to Porter's "personal and informal list of [ten] to [fifteen] factors" concerning "community involvement and professionalism";[9] and the candidates' past job performance "as reported by commanding officers or supervisors."[10] Porter discussed this

---

[7] Lieutenant Detective Arthur Sullivan explained that the follow up "could be anything from an arrest report to an investigative report . . . where they're not completed."

[8] Detective Sergeant David Avery specifically testified that Sherman had been responsible for a case that had "time lapsed," and that Sherman had ongoing difficulties with "incomplete log items" in his roll call logs. Detective Sergeant Anthony Marag testified that he had had to speak to Sherman three or four times about additional steps that needed to be taken in an investigation, and that, although Sherman improved immediately afterwards, the improvement was not sustained. Porter was familiar with one week where Sherman was "in the office . . . almost every day . . . getting caught up on a multitude of reports."

[9] The factors included "leadership by example, which [Porter] considered the most important factor . . .; civil service examination score; departmental seniority; experience; ranks and positions held; arrest and citation statistics; education; military background; 'discipline issues' (which [the magistrate understood] to mean the applicant's record of discipline); 'sick leave'; command presence; community policing philosophy; dedication to and involvement in the community; and dedication and loyalty to the police department."

[10] Porter testified that he used the interview panel's scores only as a general indication of who the panel members thought were the top five candidates, and that he himself

recommendation with the town manager, David Murphy, who was the appointing authority under the town charter.  Murphy "wanted to dig a little bit deeper," because such a promotion would involve a bypass of Sherman.  He reviewed Sherman's personnel file, but "nothing there made a strong impression on him" -- which, the magistrate found, was "possibly because the police department does not conduct annual performance reviews."  Porter suggested that Murphy speak with Sullivan, and Murphy did so.  Based on this conversation, Murphy testified, "I think the feedback I got on . . . Sherman was that he's a good police officer, will be a good sergeant, but not yet."

On July 6, 2010, Pace wrote a letter to Murphy, recommending that Sherman not be promoted to sergeant.  He wrote that several of Sherman's answers during the interview "were vague," and that in some areas Sherman "did not have a clear understanding of basic leadership qualities . . . such as leading by example and command presence."  Pace also wrote that Sherman's supervisors had reported that Sherman had "difficulty in following through on cases and . . . needs supervision."  On the same day, Pace wrote three very similar letters to Murphy recommending that Burton, Lewis, and Duval be promoted; all

---

independently had ranked the candidates according to his own criteria, "pick[ing] who [he] thought were . . . the top three" candidates.

three letters stated that the reason for the promotion recommendation was the candidate's "interview and his overall work ethic and his solid command presence."  The letters provided specific positive comments on the candidate's background and interview performance; cited the candidate's length of service in the department; and, in two instances, described the candidate's prior military service.[11]

On July 7, 2010, Murphy wrote to Sherman informing him that he had been bypassed, and explaining the reasons for the bypass. The letter stated:

> "The reasons for your nonselection include the totality of the review process including the interview, review of your personnel files, and discussion with your immediate supervisor. Specifically the committee found that some of your answers were vague.  You did not demonstrate a clear understanding of leadership qualities such as leading by example and command presence.  Your supervisor noted that you had difficulty following through on cases and that you needed supervision."

---

[11] Regarding the interviews, Pace wrote that Burton "demonstrated an excellent understanding . . . of the use of progressive discipline in the supervision of police personnel and . . . exhibited a truly unique understanding of the use of mentoring and counseling in the role of police sergeant," and that he "was able to cite specific examples of how he has led during times when a police supervisor was not immediately available."  Lewis displayed "excellent knowledge surrounding use of force issues and the role of the police sergeant as trainer on a continuing and daily basis," and "impressed the panel with some innovative and creative ideas" about community policing.  Duval "truly understood the need for the police to be compassionate and work with the community," and could "cite specific examples of leading by example."

Murphy testified that he had based his decision primarily on Porter's recommendation and discussions with Porter, as well as his conversations with Sullivan and Pace.[12]

3. Prior proceedings. Sherman appealed the bypass, and, following an evidentiary hearing, the DALA magistrate recommended that Sherman's appeal be dismissed, because, notwithstanding that the interview process had been flawed, and the evaluation of Sherman's job performance was "possibly flawed," the town had a reasonable justification for the bypass. The magistrate stated that the town's interview process "was not exactly a model to be followed," noting that the interviews were not recorded; that there was no "complete and contemporaneous record of the interviewees' evaluations and scoring"; and that the candidates' answers were not objectively determined to be right or wrong, or relatively better or worse compared to each other. The magistrate also noted the town's lack of an annual, written process of evaluating job performance as not "a model to be followed," but concluded that the town had demonstrated, by a preponderance of the evidence, that there were "sufficient reasons to justify [a] bypass" despite an "overly subjective" interview process  The magistrate observed that Sherman had "at

---

[12] Murphy also testified that he would not have considered a negative opinion from an interview panel as a justifiable reason for a bypass of the highest-ranked candidate on the certification list.

no time introduced any evidence, or even suggested, that the [t]own's decision to bypass him for promotion was politically motivated."

The commission adopted the magistrate's findings and recommendation, again noting that the interview process had been flawed.  The commission stated, "[W]e believe that the interview process was flawed and does not satisfy the standard we expect should be required to assure a properly reviewable 'level playing field' which 'protect[s] candidates from arbitrary action and undue subjectivity on the part of the interviewers,' which is the lynch-pin to the basic merit principle of the [c]ivil [s]ervice [l]aw" (citation omitted).  Nonetheless, the commission concluded that the "independent judgment of the [department's] senior commanders, including the former and current [p]olice [c]hief about [Sherman's] need to improve certain aspects of his job performance that would seem essential to the duties at a supervisory level, as well as the strong positive opinions about the ability of the selected candidates, provides sufficient independent and reasonable justification to bypass [Sherman] at this time."[13]  The commission stated that

---

[13] The decision also stated that the commission expected that Sherman would improve his skills to correct his "management deficiencies," and commented that it had "every reason to believe" Sherman would obtain "promotion to a management position in the future."

"[n]o substantial evidence appears to have been presented that these judgments were formed out of bias or other unlawful predisposition against [Sherman]."

After Sherman sought judicial review of the commission's decision, a Superior Court judge denied his motion for judgment on the pleadings and his motion for reconsideration, "find[ing] credible and substantial evidence in the administrative record to support the . . . commission's decision.

Discussion. 1. Standard of review. Judicial review of a final decision of the commission is governed by G. L. c. 30A, § 14. See Police Dep't of Boston v. Kavaleski, 463 Mass. 680, 689 (2012) (Kavaleski). "We may set aside or modify the commission's decision if we conclude that 'the substantial rights of any party may have been prejudiced' by a decision that is based on an error of law, unsupported by substantial evidence, or otherwise not in accordance with the law." Id. We generally defer "to the [commission] on questions of fact and reasonable inferences drawn therefrom" (citation omitted). Id. at 689.

It is the role of the commission to determine, "'on the basis of the evidence before it, whether the appointing authority [has] sustained its burden of proving, by a preponderance of the evidence, that there was reasonable justification' for the decision to bypass the candidate." Id.

at 688, quoting <u>Brackett</u> v. <u>Civil Serv. Comm'n</u>, 447 Mass. 233, 241 (2006). Reasonable justification "means 'done upon adequate reasons sufficiently supported by credible evidence, when weighed by an unprejudiced mind, guided by common sense and by correct rules of law.'" <u>Kavaleski</u>, <u>supra</u>, quoting <u>Brackett</u> v. <u>Civil Serv. Comm'n</u>, <u>supra</u>. "[T]he commission owes substantial deference to the appointing authority's exercise of judgment in determining whether there was 'reasonable justification,'" and "deference is especially appropriate with respect to the hiring of police officers." <u>Beverly</u> v. <u>Civil Serv. Comm'n</u>, 78 Mass. App. Ct. 182, 188 (2010). Nonetheless, in determining whether an appointing authority's decision to bypass is justified, the commission's "primary concern is to ensure that the [appointing authority's] action comports with '[b]asic merit principles,' as defined in G. L. c. 31, § 1."[14] <u>Kavaleski</u>, 463 Mass. at 688.

---

[14] General Laws c. 31, § 1, defines "[b]asic merit principles" as follows:

> "(a) recruiting, selecting and advancing of employees on the basis of their relative ability, knowledge and skills including open consideration of qualified applicants for initial appointment; (b) providing of equitable and adequate compensation for all employees; (c) providing of training and development for employees, as needed, to assure the advancement and high quality performance of such employees; (d) retaining of employees on the basis of adequacy of their performance, correcting inadequate performance, and separating employees whose inadequate performance cannot be corrected; (e) assuring fair treatment of all applicants and employees in all aspects of personnel administration without regard to political

"[T]he commission must focus on the fundamental purposes of the civil service system -- to guard against political considerations, favoritism, and bias in governmental employment decisions, including, of course, promotions, and to protect efficient public employees from political control." Cambridge v. Civil Serv. Comm'n, 43 Mass. App. Ct. 300, 304 (1997). The commission must "properly place[] the burden on the [appointing authority] to establish a reasonable justification for the bypass[] . . . and properly weigh[] those justifications against the fundamental purpose of the civil service system . . . to ensure decision-making in accordance with basic merit principles" (citation omitted). Massachusetts Ass'n of Minority Law Enforcement Officers v. Abban, 434 Mass. 256, 264 (2001).

2. Reasonable justification. Relying on the commission's comments regarding the town's "flawed" interview process, Sherman contends that there was no reasonable justification for the town's decision to bypass him. Specifically, Sherman argues that the bypass was not reasonably justified because it was substantially based on a "totally subjective" interview process

affiliation, race, color, age, national origin, sex, marital status, handicap, or religion and with proper regard for privacy, basic rights outlined in this chapter and constitutional rights as citizens, and; (f) assuring that all employees are protected against coercion for political purposes, and are protected from arbitrary and capricious actions."

that was "not authorized by the [administrator]" and "amounted to an attempt to circumvent the results of the [c]ivil [s]ervice examination ."  While we agree that the town's interview process was flawed, we do not agree that, as a result, the bypass was not reasonably justified.

An appointing authority may conduct oral interviews of candidates who have been certified to it from the eligible appointment list.  See Flynn v. Civil Serv. Comm'n, 15 Mass. App. Ct. 206, 208 (1983).  While such interviews inevitably have a subjective component, they should be "structured in an attempt to protect candidates from arbitrary action and undue subjectivity on the part of the interviews."  Id.  We agree with the commission that the interviews conducted by the town failed to live up to that standard.  The interviewers did not agree in advance on criteria for scoring the candidates' interview performance, but, rather, scored the candidates on the "totality" of their performance.  The record also reflects a number of other irregularities in the town's procedure.[15]

---

[15] For instance, there apparently was confusion among the panel members about how to score candidates.  Among other things, Officer Jeff Chaplin had been unaware that he was supposed to score the candidates numerically, and instead gave them letter grades.  The panel's final scores for the candidates were not available at the hearing and had to be reconstructed, to the extent possible, from testimony, because some of the panelists' scores had never been written down.  The reconstructed scores contained a few arithmetic errors.  Some members of the panel did not take notes on Sherman's

We recognize that procedural flaws conducive to subjective or arbitrary decision making could be a "red flag" signaling that a bypass decision resulting from the flawed procedures was motivated by political considerations, favoritism, or bias.  See Riffelmacher v. Board of Police Comm'rs of Springfield, 27 Mass. App. Ct. 159, 164-165 (1989), quoting Rowe v. General Motors Corp., 457 F.2d 348, 358-359 (5th Cir. 1972) ("open-ended and uncontrolled" interview procedure is "ready mechanism for discrimination").  Here, the commission considered this risk and found no evidence to support it.  Nor does Sherman suggest that his bypass was based on an unlawful motive.

Nevertheless, because a flawed selection procedure raises the possibility of unlawful decision-making by the appointing authority, any decision arising from a flawed procedure warrants careful scrutiny by a reviewing court.  We therefore have examined the entire administrative record to determine whether there is evidence that the town's bypass was motivated by an improper reason.  See Massachusetts Ass'n of Minority Law Enforcement Officers v. Abban, 434 Mass. at 264-265 (examining "the entire administrative record . . . and tak[ing] into account whatever in the record would fairly detract from the

---

performance, although they did so for other candidates.  And, in many cases, neither the panel members' written notes nor their testimony at the hearing provided substantive reasons why they awarded a given score to a particular candidate.

supporting evidence's weight" [citation omitted]).  Although the record includes evidence that gives us pause,[16] we are satisfied that the commission's conclusion that Sherman's bypass was not motivated by an improper reason was supported by substantial evidence.[17]

A promotional decision may be reasonably justified on the merits, even where the appointing authority uses flawed procedures for selecting candidates, in the following limited circumstance:  where the appointing authority had a reasonable justification on the merits for deciding to bypass a candidate, and the flaws in the selection process are not so severe that it is impossible to evaluate the merits from the record.  In such a case, the candidate's bypass appeal should be denied despite the

---

[16] We note, for example, Porter's relatively unconstrained postinterview ranking of the candidates, which formed the basis of his recommendations to Murphy.  We note also that the record does not indicate whether the job performance of the other candidates was subjected to the same scrutiny as Sherman's.

[17] We recognize that a flawed interview process could serve to mask the presence of implicit gender and racial bias in the decision-making process.  See, e.g., Morris vs. Braintree Police Dep't, Civil Serv. Comm'n, No. G1-13-173 (Dec. 11, 2014) (commission allowed candidate's bypass appeal in part because police department "took few . . . steps to insure that the interview process was reasonably structured and capable of meaningful objective review," and candidate was bypassed "because of [only] slightly better interviews" by other candidates; bypassed candidate "had a well-documented record as a successful law enforcement professional"; and there were other "red flags," including differences between bypassed candidate's age and race and those of selected candidates).  No such claim was made here.

presence of procedural flaws, because the appointing authority comported with "the fundamental purpose of the civil service system, . . . to ensure decision-making in accordance with basic merit principles." Id.

Here, the town's decision to bypass Sherman is supported in part by the over-all low score the interview panel awarded Sherman relative to the promoted candidates. It is supported also by Pace's post-interview letters to Murphy, articulating reasons why the candidates' interview performances warranted the bypass. This would be a much closer case, however, if the candidates' interview performances were the only justification offered for the bypass decision. Aside from the interviews, there is, as the commission noted, reasonable justification for the bypass based on the evaluation of Sherman's past job performance by his superiors. The magistrate found that Sherman's supervisors had raised concerns that he had difficulty in following through on case investigations and needed supervision -- concerns that were communicated to Porter and Murphy by Sullivan. Part of the job of a police sergeant is to ensure that those under his or her command follow through on the work needed to complete police investigations, and Sherman's failure to do so with his own cases is certainly reasonable

justification to bypass him for promotion to that position.[18]

The bypass therefore was properly affirmed by the commission because, despite the flawed selection process, the town was reasonably justified in deciding that Sherman was not yet ready to assume the duties of a police sergeant -- a decision to which the commission appropriately showed deference. See Flynn v. Civil Serv. Comm'n, 15 Mass. App. Ct. 206, 208-211 (1983) (upholding bypasses against challenges to interview and scoring procedures used in selection process because there was

---

[18] The evidence that Sherman's job performance supported a reasonable justification for his bypass was somewhat limited, in part because the department did not conduct annual, written performance reviews under the performance evaluation system established by the administrator pursuant to G. L. c. 31, § 6A.

An appointing authority may use any information it has obtained through an independent, impartial, and reasonably thorough review as the basis of its decision to bypass a candidate. See Beverly v. Civil Serv. Comm'n, 78 Mass. App. Ct. 182, 189 (2010). The appointing authority may rely upon credible anecdotal evidence of job performance concerns to form the basis of a reasonable justification for bypass, so long as its decision satisfies basic merit principles. The decision may not be arbitrary, based upon political or personal connections, or applied unequally to other candidates. The closer that an appointing authority's procedures hew to those set out in G. L. c. 31, § 6A, the more confident we will be that the evaluation of job performance was fair and not arbitrary.

Here, the town's evaluation of Sherman's job performance was based largely on informal conversations with Sullivan, who had difficulty identifying at the hearing particular instances of poor performance. Testimony by Sherman's direct supervisors, however, did identify specific instances supporting the magistrate's finding that at least one of the supervisors had specific incidents to support his assessment of Sherman.

"no evidence to show that the appointing authority was motivated by anything other than merit or that its actions were . . . designed to conceal improper reasons").[19]

Judgment affirmed.

---

[19] Sherman also argues that Murphy's bypass letter cited the three selected candidates' training, length of experience, and military service as reasons for their selection, and that -- because these three factors are already considered by HRD in determining a particular candidate's final certification score -- none of them is a valid reason for a bypass, and that offering them as reasons for a bypass is impermissible "double credit." At least on the facts of this case, we disagree. Although credits are provided by statute to certified candidates for "training and experience," G. L. c. 31, § 22, and the names of veterans are placed "ahead of the names of all other persons" on the certification list, G. L. c. 31, § 28, it does not follow that an appointing authority may not consider factors relating to a candidate's experience, training, or military service in deciding to bypass a candidate. As Porter explained during his testimony, for instance, where a veteran has been given a preference on the certification list simply by virtue of being a veteran, it is not "double credit" to consider what he or she "did in the military," and "what sort of leadership qualities" he or she has.