NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-457

PIERRE GRENIER

vs.

CIVIL SERVICE COMMISSION & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Pierre Grenier, appeals from an order of a judge of the Superior Court granting judgment in favor of the defendants, the Civil Service Commission (commission) and the city of Springfield (city).  The judge affirmed the decision of the commission that the city had reasonable justification to bypass Grenier for a promotion to district fire chief.  We affirm.

---

[1] City of Springfield.  The complaint also names the Fire Department of Springfield, but the city's brief asserts that it has responded for the Fire Department as it is not an independent entity capable of suit.

    Background.[2]  In August 2018, the Massachusetts Human

Resources Division (HRD) established a list of eligible

candidates to fill positions of district fire chief in the city,[3]

ranked in order based on the candidates' scores on the civil

service examination and veteran status.  Six candidates were on

the list; Grenier's rank was third.[4]

    Grenier is a tenured member of the Springfield Fire

Department, where he has worked for over twenty-three years.

Throughout his career, Grenier has held leadership positions

including fire captain, acting district chief, and district

chief's aide.  He has a clean disciplinary record with the SFD

and is close to completing an associate's degree in Fire

Science.  In addition to his work as a firefighter, Grenier is a

licensed journeyman electrician.  Grenier is a veteran of the

U.S. Marine Corps, where he served as a squad commander and was

---

[2] The facts are drawn from the findings of the commission
and other documents of record.

[3] A district fire chief is a senior command position.  There
are eleven such positions, reporting to two deputies as well as
the head of the SFD and appointing authority, Fire Commissioner
Bernard Calvi.

[4] On the list, two names appeared before Grenier's name and
three names appeared after his. For ease of understanding, we
refer to the two candidates ranked above Grenier as candidates
"A" and "B" and the lower-ranked candidates as "C," "D," and
"E."

deployed during Operation Desert Storm and Operation Desert Shield.

In December 2019, the HRD issued a certification authorizing the Springfield Fire Department (SFD) to fill five vacancies for district fire chief from the eligible list. As part of that process, SFD formed a selection board including Fire Commissioner Bernard Calvi, an SFD Deputy Chief, two outside fire chiefs, the Springfield Director of Finance and Administration, the Springfield Chief Diversity and Inclusion Officer, and the Springfield Assistant Human Resources Director. While the appointment decision ultimately resided solely with Calvi, the selection board interviewed all the candidates. They used a semi-structured process during which each candidate was asked the same ten questions. Each board member scored each answer based on a scale of one to five, with one being a low score.

One of the interview questions asked the candidates to describe how they would respond to a hypothetical fire scenario in which there was a "fire-consumed" two-story house and potential that someone was trapped inside. Grenier stated that he would respond to the scenario by streaming water from the outside into the building to quell the fire. At the same time, he would send in firefighters to search for anyone trapped inside. While testifying before the commission, Calvi described

3

Grenier's stated strategy as one of "opposing attacks," which would be "very dangerous" for firefighters. Calvi additionally noted that the scenario mirrored a real-life event -- the "Crystal Street fire" -- in which Grenier had been involved. In the Crystal Street fire, Calvi responded to a fire where Grenier was serving as acting district chief and the commander on scene. Grenier had taken command from a different commander who had ordered firefighters to enter the building with water while water streams were still attacking the fire from outside.[5] Calvi interceded and explained the importance of ensuring that the exterior water streams were not operating while firefighters were entering the building. Calvi was particularly troubled that Grenier failed to apply his real-life experience and coaching to the interview hypothetical, which affected Grenier's score on that question.

A second interview question asked the candidates to discuss their ideas for improving the SFD. Candidate C suggested developing training to increase skills for new firefighters and to close gaps in knowledge and expertise. Candidate D encouraged increasing community outreach and service, such as

---

[5] Calvi testified that Grenier had made the order, however, the commission found that the evidence established that it was Grenier's predecessor in command who ordered the opposing strategies. The commission also found that Grenier was "uncertain whether to countermand the order on his own," at which point Calvi took control of the situation.

through public events. Candidate E stated that there was a lack of accountability and encouraged broader communication in the department around training gaps. Grenier answered the question by stating that he felt the department was going in the right direction and should maintain that path. This response earned Grenier comparatively low scores across the interviewers.

In addition to the interview scores, Calvi considered the candidates' scores on the civil service examination,[6] their level of education, and other relevant professional experience. Based on his review, Calvi appointed five of the candidates to the position of district fire chief, excluding Grenier. In accordance with G. L. c. 31, § 27, Calvi issued a letter to Grenier, stating three reasons for the bypass. First, as compared to the other candidates, Grenier had pursued less continuing education in the field of fire science and his focus was on his "side job as an electrician." Second, Grenier's response to an actual fire scene "put lives at risk" and his answer to the hypothetical fire scenario demonstrated an inability to learn from his experience during the Crystal Street fire. Third, Calvi cited Grenier's lack of vision for improving

---

[6] Calvi testified that he considered the examination scores only to the extent that they got the candidate "in the door" of the interview.

the department, which was disappointing given his years of experience, especially in leadership.

Grenier appealed to the commission, which found that the interview process was unbiased and reasonable justification existed to support the bypass of Grenier. A judge of the Superior Court affirmed the commission's decision and Grenier now appeals.

Discussion. "Pursuant to G. L. c. 31, § 44, we review the commission's decision to determine if it violates any of the standards set forth in G. L. c. 30A, § 14(7), and cases construing those standards" (quotation and citation omitted). Brackett v. Civil Serv. Comm'n, 447 Mass. 233, 242 (2006). "We generally accord considerable deference to the commission's disposition of a charge . . . . [unless] the commission commits an error of law." Boston Police Superior Officers Fed'n v. Labor Relations Comm'n, 410 Mass. 890, 892 (1991). The commission must determine "whether the appointing authority sustained its burden of proving, by a preponderance of the evidence, that there was reasonable justification for the action taken." Brackett, supra at 241. A bypass decision is reasonably justified when it is made with "adequate reasons sufficiently supported by credible evidence, when weighed by an unprejudiced mind guided by common sense and by correct rules of

6

law."  Id., quoting Selectmen of Wakefield v. Judge of First

Dist. Ct. of E. Middlesex, 262 Mass. 477, 482 (1928).

Grenier challenges the commission's finding of reasonable

justification for the bypass on a number of grounds.

1.  The interview process.  Grenier contends that it was

improper for the appointing authority to rely solely on the

interview process in making its bypass determination and

challenges certain aspects of the structure of the process.

Section 7 of Chapter 31 of our General Laws mandates that

all "promotional appointment[s] within the official service

shall be made . . . after certification from an eligible list."

In assessing eligible candidates from that list, "[a]n

appointing authority may use any information it has obtained

through an independent, impartial, and reasonably thorough

review."  Sherman v. Randolph, 472 Mass. 802, 813 n.18 (2015).

This includes "oral interviews of candidates who have been

certified to it from the eligible appointment list."  Id. at

811.  In keeping with the "fundamental purpose of the civil

service system [which] is to guard against political

considerations, favoritism, and bias in governmental hiring and

promotion," Massachusetts Ass'n of Minority Law Enforcement

Officers v. Abban, 434 Mass. 256, 259 (2001), interviews should

be "structured in an attempt to protect candidates from

arbitrary action and undue subjectivity."  Flynn v. Civil Serv.
Comm'n, 15 Mass. App. Ct. 206, 208 (1983).

Here, the commission concluded that the interview process
used by the city was "reasonably fair and not overly subjective
or arbitrary."  We agree.  The selection board included four
senior-level public safety officials from within and outside the
department as well as city human resources officials.  Each
interviewee was asked the same set of standard questions, which
appropriately inquired into qualities that would be important in
a district fire chief.  The interviewers scored those responses
with a numerical system.  See Flynn, 15 Mass. App. Ct. at 208
(numerical system is preferable in interview process because it
reduces arbitrary action and bias).  The interviewers also took
notes, which the commission reviewed and found to be "remarkably
consistent."[7]  The interview process used by the city was
therefore appropriate.  Contrast Sherman, 472 Mass. at 811
(interview process flawed where assessment criteria were not
agreed upon by interviewers in advance and candidates were
scored on vague "totality" of performance standard).

Additionally, while Grenier's responses to two of the
interview questions were ultimately decisive in Calvi's choice

---

[7] The commission indicated that it would have preferred to
have recordings of the interviews, but the robust and consistent
notes ameliorated that deficiency.  We agree.

8

to promote the lower-ranked candidates, the interview was not the sole criterion used in the selection process.  Rather, the city appropriately looked at the candidates' examination scores, education and experience, and relevant professional qualities as demonstrated through the candidates' responses to interview questions.

2.  Bias of the appointing authority.  Grenier broadly contends that Calvi was biased against him and this bias infected the entirety of the appointment process.  Grenier argues that this bias is demonstrated by the fact that Calvi discredited Grenier's educational experiences relative to those of the lower-ranked candidates, judged Grenier's interview answers overly harshly, and over-emphasized the Crystal Street fire incident as compared to the rest of Grenier's work history.[8]

The commission determined that any negative opinions Calvi held about Grenier were "all based on [Calvi's] percipient knowledge and perception derived from Capt. Grenier's on-the-job performance and did not come from an unlawful bias or undue political or personal favoritism toward any of the other candidates."  We agree.  Calvi articulated that he was most

---

[8] Grenier also suggests that one of the higher-ranked candidates was not interviewed, demonstrating that he was treated differently during the appointment process.  Grenier does not point to, and we have not found, anything in the record to support this contention.

9

troubled by Grenier's failure to learn from on-the-job experience and by his lack of a vision for improvement of the department. These are legitimate employment considerations and do not demonstrate a personal or political bias against Grenier as an individual. While the commission concluded that Calvi's reliance on Grenier's education and employment history as a reason for the bypass was not justified,[9] this alone is not sufficient to demonstrate bias. It is true that Calvi was less generous in his assessment of Grenier's educational history, however, Calvi's concerns remained appropriately aimed at whether Grenier had displayed growth and development in the field of fire science as compared to the other candidates.

3. <u>Whether the commission's decision was based on an error of law</u>. Grenier further contends that the commission's decision was based on multiple errors of law. We address each argument briefly in turn.

First, Grenier argues that the commission applied an inappropriate "deference" standard in reviewing the appointing authority's decision. The commission's role is to review "the legitimacy and reasonableness of the appointing authority's

_____

[9] The commission took careful note of the fact that in some ways Grenier's relative experience -- such as his time serving as acting district chief -- worked against him in that he was held to a higher standard than other candidates. Consideration of experience does not show personal or political bias or animus.

10

actions." Beverly v. Civil Serv. Comm'n, 78 Mass. App. Ct. 182, 187 (2010). It "owes substantial deference to the appointing authority's exercise of judgment in determining whether there was reasonable justification shown" for the bypass (quotation and citation omitted). Id. at 188. In assessing the three reasons Calvi articulated to support the bypass of Grenier, the commission appropriately considered whether the city had shown that Calvi's decision was "reasonably justified." Indeed, the commission found that there was not reasonable justification to bypass Grenier based on a comparison of his continuing education experience alone. However, the commission appropriately credited Calvi's testimony that Grenier's responses to the interview questions raised concerns about his qualifications for the position, despite his relative seniority.

Second, Grenier argues that where the commission referred to the position of deputy chief as opposed to district chief, this demonstrated that the commission applied the wrong standard of review. It is true that the commission did refer to the position of "deputy fire chief" or "deputy chief" in its opinion and as part of its assessment of the appointment process.[10] However, the commission also demonstrated knowledge of the SFD

---

[10] The commission refers to the position of "deputy fire chief" four times and to "district fire chief" or "district chief" approximately thirteen times.

11

structure, including that there were only two deputy chief positions and eleven district chief positions. At the hearing, testimony and evidence described the structure of SFD and the particular responsibilities of the district chief. Looking to the record as a whole, we are convinced that the commission's references to "deputy" chief were mere scrivener's errors and the commission appropriately assessed the appointment process to determine whether Calvi had based his decision on factors relevant to promoting a candidate to the position of district chief.

Third, Grenier argues that the commission did not appropriately consider whether the appointing authority's decision was in accord with "basic merit principles," as defined in the civil service statute. See G. L. c. 31, § 1 ("basic merit principles" mean "recruiting, selecting and advancing of employees on the basis of their relative ability, knowledge and skills"). This argument largely repeats Grenier's contention that the interview alone cannot support a bypass decision. As discussed supra, Calvi appropriately considered Grenier's responses to the interview questions and weighed them in conjunction with his work history, educational development, and examination score. Calvi was particularly concerned that Grenier failed to demonstrate that he had learned from the Crystal Street fire incident. Further, Grenier gave an

12

unsatisfactory response when asked about his future vision for the department.  Candidates C, D, and E each gave concrete and specific examples of how the department could be improved which demonstrated that they were engaged and forward-thinking, important qualities in a leadership position.  The commission found that Calvi's assessment of those answers was credible and unbiased and that Grenier's interview performance "raised a legitimate concern about his readiness to assume an elevated level of responsibility on a permanent basis."  We agree.

Fourth, Grenier contends that the commission's decision was not supported by substantial evidence.  Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  G. L. c. 30A, § 1(6).  Based on testimonial and documentary evidence presented at the hearing, the commission determined that Grenier's poor performance on two important interview questions involving executive decision-making and firefighter safety were the basis for the bypass.  As discussed, this determination is fully supported by the record before us.[11]

_____

[11] Grenier argues that the commission mischaracterized his score on the fire scenario question as the lowest of all the candidates.  The commission, however, noted the lower score of at least one of the other candidates.  But, even if true, the commission acknowledged that Grenier "was not the only candidate who furnished a problematic answer to the fire scenario question."  The commission further explained that Grenier's lowest scoring answer to the question regarding improving the

13

Fifth, Grenier argues that the commission substituted its judgment for that of the authority.  Grenier points to the fact that the commission found that when Calvi arrived on scene to the Crystal Street fire, Grenier had not ordered the problematic "opposing attack," but was instead hesitating to make a decision.  This discrepancy between Calvi's understanding of the Crystal Street fire and the facts found by the commission does not mean that the commission substituted its opinion for that of the appointing authority.  In the same paragraph, the commission credited Calvi's testimony that Grenier was unsure what action to take at the scene.  And, even according to Grenier's version, Calvi told him to shut off the deck gun.  In light of those facts and Grenier's poor performance on the other interview question, the commission appropriately concluded that Calvi had reasonable justification for the bypass.  Contrast Cambridge v. Civil Serv. Comm'n, 43 Mass. App. Ct. 300, 305 (1997) (commission impermissibly substituted its judgment over appointing authority's where commission agreed with relevance of factors but weighted them differently).

4.  Failure to provide individual letter/justification for each of three bypasses.  Lastly, Grenier contends that he was

_____

department separated him from the other candidates and taken together with the poor answer on the fire scenario question justified the decision to bypass him.

14

entitled to an individualized letter supporting each bypass of candidates C, D, and E. Grenier fails to cite to any legal authority that supports this contention; accordingly, this does not rise to the level of appellate argument. See Mass. R. A. P. 16(9)(A); Kellogg v. Board of Registration in Med., 461 Mass. 1001, 1003 (2011) ("Briefs that limit themselves to 'bald assertions of error' that 'lack[] legal argument . . . [do not] rise[] to the level of appellate argument" [citations omitted]). In any event, G. L. c. 31, § 27, mandates that where a lower-ranked eligible candidate is selected for appointment, the appointing authority "shall immediately file . . . a written statement of his reasons for appointing" the lower-ranked candidate. Here, Calvi issued a letter which compared Grenier to candidates C, D, and E and explained how Grenier's candidacy was deficient as compared to the lower-ranked individuals. Accordingly, Grenier was provided the reasons underlying the bypass and was able to meaningfully appeal the bypass. Contrast Police Dep't of Boston v. Kavaleski, 463 Mass. 680, 691 (2012) (commission erred in failing to alert department that it would

15

be using certain expert evidence, impinging on ability of the department to contest and respond to the evidence).

Judgment affirmed.

By the Court (Henry,
Hershfang & Smyth, JJ.[12]),

Clerk

Entered:  October 11, 2024.

---

[12] The panelists are listed in order of seniority.