# Kevin Staveley vs. City of Lowell.

No. 06-P-1192.

Middlesex. November 6, 2007. - March 14, 2008.

Present: Lenk, Brown, & McHugh, JJ.

*Municipal Corporations,* Police. *Civil Service,* Police, Promotion. *Police,* Promotional examination. *Administrative Law,* Exhaustion of remedies.

In a civil action brought by the plaintiff, a police captain, against the defendant city after the city manager, acting as "delegation administrator" responsible for acceptance and processing of examination applications and verification of examination eligibility, refused to allow the plaintiff to participate in an evaluation process necessary for promotion to deputy superintendent, the judge erred in allowing the plaintiff's motion for summary judgment, where the plaintiff failed to exhaust administrative remedies, in that an administrative process was available under G. L. c. 31, § 2(*b*), for appeals to the Civil Service Commission (commission) from decisions of the administrator of the civil service laws, including a "delegation administrator" such as the city manager [404-407]; further, the plaintiff's claims fell within the generous scope of the commission's oversight responsibility under § 2(*b*) [407-408]; likewise, the plaintiff's claims that the city manager's action violated his right to due process of law were capable of vindication through an appeal to the commission [408-409].

At a hearing on the appropriate remedy after the defendant city had been adjudicated liable for a violation of the civil service laws and the plaintiff's right to due process of law after the city had refused to allow the plaintiff, a police captain, to participate in an evaluation process necessary for promotion to deputy superintendent, the judge erred in awarding the plaintiff damages based on the difference between his salary as a captain and the salary he would have received had he been promoted to deputy superintendent, where even if the plaintiff had been permitted to participate in the evaluation process, there was no guarantee that he would have been promoted. [409-410]

Civil action commenced in the Superior Court Department on June 14, 2000.

The case was heard by *Peter M. Lauriat,* J., on motions for summary judgment, and an assessment of damages was ordered by *Patrick J. Riley,* J.

*Maria Sheehy*, Assistant City Solicitor, for the defendant.

*Peter J. Perroni* for the plaintiff.

McHugh, J. Lowell police Captain Kevin Staveley sued the city of Lowell (city) after the city refused to allow him to participate in an evaluation process necessary for promotion to deputy superintendent. In his suit, Staveley claimed that the city's action violated his rights under G. L. c. 31, § 74, as well as his right to due process of law. A judge of the Superior Court allowed Staveley's motion for summary judgment on liability and a second judge awarded him damages in the amount of $68,200. The city appeals. We reverse.

The plaintiff's motion for summary judgment, and the city's cross motion, were argued on a statement of agreed facts.[1] The essential facts are these. In April, 1997, Staveley and the city entered into an agreement settling Staveley's then pending claim before the Civil Service Commission (commission). That claim alleged that the city had improperly bypassed Staveley, then a Lowell police lieutenant, for promotion to captain in favor of a person below him on the promotion list. As part of the settlement, Staveley was promoted to captain but agreed to "forgo the opportunity to apply for promotion to the rank of Deputy Superintendent in the Lowell Police Department for the next available promotion after the execution of this agreement."

When Staveley and the city executed the agreement, one deputy superintendent position was available, but there was no outstanding civil service list for that position. In August, 1997, however, the city council enacted an ordinance creating a second deputy superintendent position effective as of July 1, 1997. Lowell police Captains Dennis Cormier and Kenneth Lavallee were provisionally appointed to fill the new and pre-existing positions pending permanent appointments.

---

[1]The case, however, was not presented as a "case stated." See, e.g., *Ware* v. *Hardwick*, 67 Mass. App. Ct. 325, 326 (2006). Ordinarily, in reviewing allowance of a summary judgment motion, we look at the record in the light most favorable to the party against whom summary judgment was granted. *Cannon* v. *Cannon*, 69 Mass. App. Ct. 414, 416 (2007). As we see it, though, the dispositive question in this case deals with primary jurisdiction. See note 7, *infra*. That question is purely one of law which we are free to decide for ourselves. See generally *Choate* v. *Zoning Bd. of Appeals of Mashpee*, 67 Mass. App. Ct. 376, 387 (2006).

About the time it created the new deputy superintendent position, the city, acting under a "Delegation Agreement" with the Massachusetts Human Resources Department (HRD), began an "assessment center" process to fill both positions permanently.[2] Under the delegation agreement, city manager Brian Martin became the "Delegation Administrator" and assumed responsibility "for all matters relative to [the] delegation agreement."[3]

In June, 1998, Staveley submitted an application and paid a fee for the assessment center evaluation, then scheduled for September, 1998. In July, Martin, citing the 1997 settlement agreement, rejected Staveley's application and returned his fee. Staveley resubmitted his application, but Martin again rejected it for the same reasons.

The assessment center evaluation took place as scheduled, without Staveley's participation. Lavallee and Cormier were listed first and second on the resulting civil service list and were appointed permanently. Staveley did not file an administrative claim, but instead commenced this action in June, 2000, some twenty months after the September, 1998, evaluation, claiming that, by refusing to allow his participation in the assessment center process, the city had violated his right to due process of law and had violated the provisions of G. L. c. 31, § 74, a statute carrying criminal penalties for those who interfere with an applicant's pursuit of certain rights under the civil service laws.[4]

In allowing Staveley's motion for summary judgment on li-

---

[2] An assessment center process involves creation of a mechanism for examining, through a series of exercises, each applicant's professional competence in a variety of areas applicable to the position he or she is seeking, here that of deputy superintendent. Under the agreement, the assessment center was to be created and administered by an outside consultant, which turned out to be the International Association of Chiefs of Police, hired by the city with HRD's approval. The assessment center process produces the scores used to "establish a civil service list from which the Appointing Authority must hire in the same way that hiring is done from a 'traditional' Civil Service list."

[3] The delegation agreement applied only to the selection process for the positions of "Deputy Police Chief, Police Captain, and Police Lieutenant." We infer from the record that the agreement's reference to "[d]eputy [p]olice [c]hief" was intended to cover selection of Lowell's "deputy superintendent." No party has argued otherwise.

[4] In pertinent part, that section provides, "No person . . . shall wilfully or corruptly defeat, deceive or obstruct any person with respect to his right,

ability, the first judge ruled that the settlement agreement did not bar Staveley from applying for the second deputy superintendent position the city created in August, 1997. Rejecting the city's claim that Staveley had failed to exhaust administrative remedies, the judge stated, in effect, that no administrative remedy existed. He concluded by ruling that the city had violated G. L. c. 31, § 74, and Staveley's right to due process of law by barring him from the assessment center process, and that his claim was not barred by laches. Having found liability, the judge scheduled the question of the appropriate remedy for resolution at a later proceeding.

At the subsequent proceeding before a second judge, the city, among other things, presented testimony from the Lowell police superintendent, who said that he had bypassed Staveley for appointment to captain and would likely have bypassed him again had he emerged at the top of a deputy superintendent list.[5] The judge concluded that because Staveley was "not allowed to be considered for the position of Deputy Superintendent[,]" and because it was "highly unlikely that [he would] *ever* be put on equal footing with other candidates for the position of Deputy Superintendent[,]" the appropriate remedy was damages measured by the difference in the salaries of a captain and a deputy superintendent. Accordingly, he awarded Staveley $68,200.[6]

On appeal, the city first argues that Staveley is barred from recovering because he failed to exhaust available administrative remedies.[7] Secondarily, the city urges that, even if Staveley is

pursuant to the civil service law and rules, of examination, . . . certification, appointment, promotion or reinstatement . . . ." G. L. c. 31, § 74, inserted by St. 1978, c. 393, § 11.

[5]Bypasses are permissible if they follow the process spelled out in G. L. c. 31, § 27. See generally *Bielawski* v. *Personnel Administrator of the Div. of Personnel Admn.*, 422 Mass. 459, 460 (1996); *MacHenry* v. *Civil Serv. Commn.*, 40 Mass. App. Ct. 632, 634-635 (1996).

[6]Although the judge did not explicitly say so, and although the record before us contains no evidence on the issue, it is logical to assume that the amount awarded represented the present value of the salary differential over Staveley's work-life expectancy. In any event, the city does not claim that the judge's damage calculation, as opposed to his decision to award any damages at all, was erroneous.

[7]Technically, the issue is one of primary jurisdiction, not exhaustion.

"The doctrine of 'primary jurisdiction' describes a situation in

entitled to recover something, he is not entitled to an award based on the salary differential the second judge utilized. On both counts, we agree.

Our conclusion that Staveley was required to exhaust administrative remedies is informed by the familiar principle that "[w]here the Legislature has provided an administrative process for the resolution of disputes in the first instance, the courts must respect that choice." *Puorro* v. *Commonwealth*, 59 Mass. App. Ct. 61, 64 (2003). Here, by enacting G. L. c. 31, § 2(*b*),[8] the Legislature created an administrative process that was available to Staveley, his claims to the contrary notwithstanding, and that was important for smooth operation of the civil service laws.

Viewed together, several components of the civil service laws reveal both the availability and the importance of the process § 2(*b*) created. By virtue of G. L. c. 31, § 5, the personnel administrator has general responsibility for administration of the civil service laws. Included among the administrator's responsibilities are the tasks of creating and administering the process that produces civil service eligibility lists.[9] See G. L. c. 31, § 5. Acting in accordance with G. L. c. 31, § 5(*l*), however, the

which a plaintiff, 'in the absence of pending administrative proceedings, invokes the original jurisdiction of a court to decide the merits of a controversy.' *Murphy* v. *Administrator of the Div. of Personnel Admin.*, 377 Mass. 217, 220 (1979). The doctrine of exhaustion pertains when administrative action has been commenced, but has not been completed. See *id.* at 220-221. *Barksdale* v. *Director of the Div. of Employment Sec.*, 397 Mass. 49, 52 (1986). . . . We note that both doctrines serve the same purpose, that is, 'promoting proper relationships between the courts and administrative agencies.' *Nader* v. *Allegheny Airlines, Inc.*, 426 U.S. 290, 303 (1976), quoting *United States* v. *Western Pac. R.R.*, 352 U.S. 59, 63 (1956)."

*Lincoln* v. *Personnel Administrator of the Dept. of Personnel Admn.*, 432 Mass. 208, 211 n.4 (2000). See *Massachusetts Correction Officers Federated Union* v. *County of Bristol*, 64 Mass. App. Ct. 461, 467-468 (2005). Nevertheless, as the parties have framed the issues, here and in the Superior Court, in terms of exhaustion, we shall employ that terminology, for the result is the same under both doctrines. See *Puorro* v. *Commonwealth*, 59 Mass. App. Ct. 61, 64 (2003).

[8]General Laws c. 31, § 2(*b*), as amended by St. 1981, c. 767, § 11, empowers the commission "[t]o hear and decide appeals by a person aggrieved by any decision, action, or failure to act by the [personnel] administrator."

[9]An eligibility list is "a list established by the administrator, pursuant to the

administrator may delegate those functions to State agencies, cities, and towns.[10]

The delegation agreement in this case, which neither party challenges, embodies the administrator's delegation of authority to the city pursuant to § 5(*l*). Under the agreement, Martin, the city manager, became the delegation administrator, responsible, as noted earlier, "for all matters relative to [the] delegation agreement." More specifically, Martin, as delegation administrator, was responsible for "acceptance and processing of examination applications[ and] verification of examination eligibility." He was also responsible for a broad range of duties normally performed by the administrator, including establishing and maintaining eligibility lists, certifications from those lists, ensuring public access to all public records, providing a mechanism for ensuring that candidates have an opportunity to review their standing on eligible lists, and other like duties. By virtue of the delegation agreement, then, Martin acted as the personnel administrator with respect to the delegated functions the agreement contained.

Neither the personnel administrator nor the delegation administrator has final and unlimited decision-making authority. Instead, those who are aggrieved by the administrator's actions and decisions have a right of appeal pursuant to G. L. c. 31, § 2(*b*), which broadly empowers the commission "[t]o hear and decide appeals by a person aggrieved by any decision, action, or failure to act by the administrator." See note 8, *supra*.

To be sure, § 2(*b*) does not explicitly mention appeals from a "delegation administrator,"[11] and Staveley therefore urges that appeals from decisions of a delegation administrator, as op-

---

civil service law and rules, of persons who have passed an examination; or a re-employment list established pursuant to section forty; or a list of intermittent or reserve fire or police officers as authorized under the provisions of section sixty; or any other list established pursuant to the civil service rules from which certifications are made to appointing authorities to fill positions in the official service." G. L. c. 31, § 1, as amended by St. 1986, c. 557, § 41.

[10]In pertinent part, G. L. c. 31, § 5(*l*), as amended by St. 1981, c. 767, § 14, says that the administrator may "delegate the administrative functions of the civil service system, so far as practicable, to the various state agencies and cities and towns of the commonwealth."

[11]General Laws c. 31, § 1, as amended through St. 1998, c. 161, § 234, defines "[a]dministrator" as "the personnel administrator of the human

posed to those of the personnel administrator, are impermissible. We do not agree, for acceptance of Staveley's argument would be fundamentally inconsistent with the central role the Legislature intended the commission to have in overseeing operation of the civil service laws.

Our decisions and those of the Supreme Judicial Court have noted that the commission brings to disputes arising out of the civil service laws a substantial body of expertise, see *Massachusetts Assn. of Minority Law Enforcement Officers* v. *Abban*, 434 Mass. 256, 262-263 (2001), on which the smooth and sound administration of those laws is dependent. The commission's expertise relates not only to the way in which various statutes affect the substantive rights of civil service applicants and employees but also the appropriate remedy for cases in which individual rights have been violated. In the remedial category, the commission's powers are broad and its expertise particularly helpful. See generally *Mulhern* v. *Civil Serv. Commn.*, 57 Mass. App. Ct. 920, 921 (2003).

Acceptance of Staveley's argument that § 2(*b*) does not permit appeals to the commission from decisions of a delegation administrator would mean that the personnel administrator, by exercising the powers of delegation contained in § 5(*l*), could remove from the commission's oversight and expertise significant decisions made in many areas covered by the civil service laws. Indeed, the broad responsibilities the administrator delegated to Martin in this case show how large an area of his statutory responsibility he could remove from the commission's oversight were we to accept Staveley's argument.

Statutes, of course, are to be construed in a manner designed to carry out the Legislature's manifest intent. See, e.g., *Anderson St. Assocs.* v. *Boston*, 442 Mass. 812, 816 (2004); *Flanagan* v. *Contributory Retirement Appeal Bd.*, 51 Mass. App. Ct. 862, 867-868 (2001). We think that the Legislature would not have placed the elaborate civil service system embodied in G. L. c. 31 under the commission's supervisory authority while at the

---

resources division within the executive office for administration and finance." For the reasons that follow, that definition does not preclude application of § 2(*b*) to those who act as the "administrator" pursuant to the administrator's lawful delegation of authority.

same time giving the administrator, whose decisions are appealable to the commission, the power to remove broad areas of the system from the commission's supervision. Instead, we think that the administrator's powers of delegation must be viewed in the context of the Legislature's decision to charge the commission with responsibility for smooth and consistent operation of a system that affects so centrally the manner in which the vast majority of the Commonwealth's police and fire personnel are hired and promoted. When the appellate provisions of § 2(*b*) are viewed in that context, we think that the "administrator" from whose decisions an appeal to the commission is available includes a "delegation administrator" like Martin.

Staveley next argues, and the first judge agreed, that even if the commission had jurisdiction to resolve appeals from decisions of the delegation administrator, there was nothing for the commission to review in this case because Martin's decision was based on his interpretation, aided by that of the Lowell city solicitor, of the settlement agreement, not on some provision of the civil service laws. In the judge's view, appeals to the commission were limited to appeals from actions of the administrator described in G. L. c. 31, § 22,[12] and none of Staveley's claims challenged those actions. See also G. L. c. 31, §§ 23, 24.

But the commission's power under § 2(*b*) ranges far beyond the contours of §§ 22-24 to encompass "appeals by a person aggrieved by *any* decision, action, or failure to act by the administrator" (emphasis added). "Persons aggrieved" are defined by § 2(*b*) as those who claim that the administrator acted in violation of G. L. c. 31 and "the rules or basic merit principles promulgated thereunder." The "[b]asic merit principles," inserted by St. 1981, c. 767, § 10, are defined in G. L. c. 31, § 1, to include

> "(*a*) recruiting, selecting and advancing of employees on

---

[12]In material part, G. L. c. 31, § 22, as amended through St. 1989, c. 269, provides:

> "Except as otherwise provided by sections sixteen and seventeen, an applicant may request the administrator to conduct one or more of the following reviews relating to an examination: (1) a review of the marking of the applicant's answers to essay and multiple choice questions; (2) a review of the marking of the applicant's training and experience; (3) a review of a finding by the administrator that the applicant did not meet the entrance requirements for the examination . . . ."

the basis of their relative ability, knowledge and skills includ-
ing open consideration of qualified applicants for initial ap-
pointment; . . . (*e*) assuring fair treatment of all applicants
and employees in all aspects of personnel administration
. . . with proper regard for . . . basic rights outlined in this
chapter and constitutional rights as citizens, and; (*f*) assur-
ing that all employees . . . are protected from arbitrary and
capricious actions."

So defined, the commission's oversight responsibility is broad,
and Staveley's claims fell within its generous scope. The delega-
tion agreement empowered Martin to make decisions regarding
"examination eligibility," and his decision to bar Staveley from
participating in the assessment process was a decision about
Staveley's ineligibility for that process, an ineligibility Martin
found in the terms of the settlement agreement. An appeal would
have allowed the commission to decide whether Martin was cor-
rect or whether his decision stretched the agreement beyond its
proper boundaries.

Insofar as Staveley's claims under the due process clause of
the Fourteenth Amendment to the United States Constitution
and under G. L. c. 31, § 74,[13] are concerned, his rights surely
were capable of vindication through an appeal to the commission.
See generally, e.g., *Cotter* v. *Boston*, 73 F. Supp. 2d 62, 67 (D.
Mass. 1999). If, on appeal, the commission concluded that
Martin was wrong, it possessed the remedial power to provide
Staveley with an opportunity to compete for the deputy super-

---

[13]We take no position on the question whether G. L. c. 31, § 74, creates a
private right of action. See generally *Parker* v. *North Brookfield*, 68 Mass.
App. Ct. 235, 237 (2007), and cases cited. Compare, e.g., G. L. c. 149, § 150
(Attorney General or aggrieved employee may bring complaint for violation
of G. L. c. 149, § 148).

We also have some doubt that the statute applies to the city. In pertinent
part, § 74 says that "[n]o person . . . shall wilfully or corruptly defeat,
deceive or obstruct . . . ." See note 4, *supra*. When used in a statute, "the
word 'person' ordinarily does not describe the State or its subdivisions." *Com-
monwealth* v. *Dowd*, 37 Mass. App. Ct. 164, 166 (1994). See G. L. c. 4, § 7,
Twenty-third (" 'Person' or 'whoever' shall include corporations, societies, as-
sociations and partnerships"). As the city notes, "When the Legislature
intends that provisions in a statute apply to municipalities or governmental
entities, it will generally manifest that intent expressly in language to that
effect." *Howcroft* v. *Peabody*, 51 Mass. App. Ct. 573, 593 (2001), quoting
from Randall & Franklin, Municipal Law & Practice § 6 (4th ed. 1993).

intendent position before it was too late to do so. See *Bielawski* v. *Personnel Administrator of the Div. of Personnel Admn.*, 422 Mass. 459, 465 (1996); *Thomas* v. *Civil Serv. Commn.*, 48 Mass. App. Ct. 446, 451 (2000); *Mulhern* v. *Civil Serv. Commn.*, 57 Mass. App. Ct. at 921. Ultimately, the commission's resolution of those and any other pertinent issues was subject to review in the Superior Court and in any necessary appellate proceedings thereafter. See G. L. c. 31, § 44. Under all of those circumstances, there simply were no permissible grounds for Staveley's election to bypass the commission before commencing this action. See generally *Puorro* v. *Commonwealth*, 59 Mass. App. Ct. at 63-67.

Although what we have said thus far is sufficient to dispose of the case, a brief look at damages, the second of the city's appellate issues, is appropriate. As mentioned earlier, the second judge, after a hearing on the appropriate remedy, awarded damages to Staveley based on the difference between his salary as a Lowell police captain and the salary he would have received had he been promoted to deputy superintendent. Even if constitutional rights are violated, however, compensatory damages are available only for the injury actually suffered. See *Santana* v. *Registrars of Voters of Worcester*, 398 Mass. 862, 869 (1986). Damages based on a wage differential, therefore, necessarily assume that Staveley would have been promoted to deputy superintendent if he had participated in the assessment process.

To apply for a civil service position, however, is not to obtain it. "The civil service system does not guarantee an applicant a promotion 'at a certain date or upon a specific event.' " *Brackett* v. *Civil Serv. Commn.*, 447 Mass. 233, 252-253 (2006), quoting from *Bielawski* v. *Personnel Administrator of the Div. of Personnel Admn.*, 422 Mass. at 466. While Staveley claims that he was "entitled to be promoted, and undoubtedly hoped that [he] would be, there was simply no guarantee that [he] would be successful in that endeavor." *Brackett* v. *Civil Serv. Commn.*, *supra* at 253. In this case, there were two available deputy superintendent positions and at least three applicants. With no evidence indicating that Staveley was more likely than either of the other two to obtain one of the positions — indeed, on a record suggesting that he was the least likely of the three to obtain

either position — there was no basis for awarding him damages based on a salary differential.

The judgment is vacated. A new judgment shall enter dismissing the case.

*So ordered.*