NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11713

KRISTIN MALLOCH  vs.  TOWN OF HANOVER & others.[1]


Suffolk.     January 5, 2015. - September 24, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Civil Service, Decision of Civil Service Commission, Eligibility
     list, Judicial review, Police, Promotion.  Police,
     Promotional examination.  Administrative Law, Agency's
     interpretation of statute, Decision, Findings, Judicial
     review, Agency's authority, Substantial evidence.
     Practice, Civil, Review respecting civil service.



     Civil action commenced in the Superior Court Department on
March 28, 2013.

     The case was heard by Paul D. Wilson, J., on a motion for
judgment on the pleadings.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Frank J. McGee for the plaintiff.
     Bryan F. Bertram, Assistant Attorney General, for the
personnel administrator of the human resources division of the
Commonwealth.

_____

     [1] Civil Service Commission and the personnel administrator
of the human resources division of the Commonwealth.

Galen Gilbert, for Carla Sullivan, amicus curiae, submitted a brief.

DUFFLY, J. The town of Hanover (town) had two open positions for sergeants in its police department. Although the plaintiff, Kristin Malloch, had scored highest on the civil service examination for promotion to a police sergeant position, the town decided to bypass Malloch and promote the candidates who had scored second and third highest on the sergeants' examination. Malloch appealed the town's decision to the Civil Service Commission (commission), pursuant to G. L. c. 31, § 2 (b), arguing that, where an appointing authority promotes a candidate other than the candidate ranked highest on the certification list; the promotion will not become effective until the appointing authority's written statement of reasons for the bypass "has been received by the administrator," G. L. c. 31, § 27;, that "received" in this context means substantially reviewed and approved by the administrator; and that the administrator[2] may not, in accordance with G. L. c. 31, § 5 (l), delegate that function to the town's appointing authority. Malloch argued also that, even if the delegation were permissible, her bypass was not supported by evidence of a

_____

[2] The administrator is the personnel administrator of the human resources division (HRD) of the Commonwealth, within the Executive Office for Administration and Finance. G. L. c. 31, § 1. In this context, the terms administrator and HRD are largely interchangeable.

reasonable justification for the bypass.  The commission denied her appeal, and Malloch sought review in the Superior Court pursuant to G. L. c. 30A, § 14.

Agreeing with Malloch that the statutory requirement that the written statement of bypass reasons must be "received by" the administrator means "reviewed and approved by" the administrator, a Superior Court judge concluded that it was not "practicable," see G. L. c. 31, § 5 (l), for the administrator to delegate that function.  The judge allowed Malloch's motion for judgment on the pleadings, ordered the town to submit its statement of bypass reasons to the human resources division (HRD), and remanded the matter to HRD and the commission, instructing HRD to decide, after having conducted a "substantive review," whether the bypass reasons should be approved.  The administrator and the town, the defendants here,[3] filed an appeal in the Appeals Court, and we allowed their petition for direct appellate review.

We conclude that the administrator may delegate its administrative function to receive statements of reasons supporting bypass promotions, and that it was "practicable," see

---

[3] The Chair of the Civil Service Commission, the chief human resources officer of HRD, and the town's manager, were named as individual parties, in their professional capacities, in the Superior Court proceedings.  The matter proceeded on appeal under the names of the organizations.

G. L. c. 31, § 5 (l), to do so here.  Because the judge remanded the matter to HRD to make such a determination without conducting his own review of whether the commission's determination was supported by substantial evidence, we vacate the judgment and remand the case to the Superior Court.[4]

1.  Background.  a.  Bypass of Malloch.  We briefly recite the facts found by the commission regarding Malloch's bypass, reserving the remaining facts for our subsequent discussion.

At the time of the decision to bypass Malloch, she had served as a police officer in the town for eight years.  She was one of two female officers in the town.  In October, 2011, Malloch took HRD's police sergeant promotional examination and received a score of eighty-six.  In April, 2012, the town certified two vacant police sergeant positions.  Malloch's name appeared first on the certification list provided to the town by HRD, ahead of three other officers.  One of those officers subsequently withdrew his name from consideration.  Malloch initially was interviewed by a panel of three senior police officers from the town and from neighboring municipalities; the panel ranked her last among the three candidates.  She then was interviewed by the town manager and the chief of police, who also ranked her last.  Based largely on these interviews, the

---

[4] We acknowledge the amicus brief submitted by Carla Sullivan.

town manager, who is the town's appointing authority, chose to bypass Malloch and promote the two other officers.

b. _HRD's delegation policy_. Effective September 1, 2009, HRD informed municipalities that it had delegated, pursuant to G. L. c. 31, § 5 (l), certain administrative functions to appointing authorities. In a memorandum issued in August, 2009, HRD wrote,

> "Each municipality will be responsible for . . . making appointments and promotions from the eligible list and providing bypass and selection reasons to the applicants in accordance with civil service law and rules. After August 31, 2009, HRD will no longer review and approve appointments and promotions. Appeals will be made directly to the [commission]."

The memorandum further explained that HRD "will provide technical assistance as needed to assist the municipalities in making appointments and promotions from the eligible list." HRD sent "a technical certification manual to each city and town," conducted training sessions to explain the type of analysis required, and provided a nonexclusive list of approved reasons for appointing authorities to consider when determining if a bypass promotion is reasonable. The manual states that reasons which are not specifically enumerated in that list "may be determined unacceptable." The manual notes also that the administrator retains the authority to audit appointing authorities to ensure compliance with civil service law.

2. _Statutory framework_. General Laws c. 31 (civil service

statute) governs civil service law in the Commonwealth and details the responsibilities and authority of the administrator, the commission,[5] and the appointing authority.[6]

The civil service statute was first enacted in 1884. See St. 1884, c. 320. It created a three-member civil service commission to establish rules for the selection of civil service employees. See St. 1884, c. 320, §§ 1-2. In 1939, the Massachusetts Special Commission Established to Study the Civil Service Laws, Rules and Regulations, with a View to Revision Thereof filed a report recommending that the commission no longer administer the civil service rules. See 1939 House Doc. No. 1722. Instead, it recommended, the "[c]ommission should be relieved of all technical and administrative matters. The only instances in which the [c]ommission should function are in its participation in the adoption of rules, and hearing and deciding all appeals." Id. The Legislature adopted this report and created a separate agency, the HRD, to handle technical and administrative matters such as administering examinations and creating certified appointment lists. See St. 1939, c. 238, § 30. See also Note, The Massachusetts Civil Service Law: Is

---

[5] The "[c]ommission" is defined as "the civil service commission of the [C]ommonwealth." G. L. c. 31, § 1.

[6] The appointing authority is "any person, board or commission with power to appoint or employ personnel in civil service positions." G. L. c. 31, § 1.

It Necessary to Destroy the Current System in Order to Save it?, 40 New Eng. L. Rev. 1103, 1106-1107 (2006).

The two separate entities have clear and distinct roles. The commission has the adjudicative duty to "hear and decide appeals by a person aggrieved by any decision, action, or failure to act by the administrator." G. L. c. 31, § 2 (b). It also may hear appeals by persons aggrieved by a decision, action, or failure to act by the appointing authority. G. L. c. 31, § 2 (c). By contrast, the administrator's duties, as detailed in G. L. c. 31, § 5, are not adjudicative, but include, among other things, the duty to administer civil service law and rules, establish classification plans, conduct examinations, and maintain records. In creating the two separate agencies with separate roles, the Legislature indicated its intent that the commission adjudicate appeals and safeguard individual rights, while the administrator completes tasks necessary to the administration of the civil service system.

To promote efficiency, the administrator has the power "[t]o delegate the administrative functions of the civil service system, so far as practicable, to the various state agencies and cities and towns of the [C]ommonwealth." G. L. c. 31, § 5 (l). Where an appointing authority identifies an open civil service position, the administrator has the duty to certify to the appointing authority eligible candidates for promotion or

appointment. G. L. c. 31, § 25. The eligible candidates are listed in order of their civil service examination scores, with the inclusion of veterans' preferences. G. L. c. 31, § 26. An appointing authority may choose to promote a person other than the highest ranked candidate on the certification list. See Brackett v. Civil Serv. Comm'n, 447 Mass. 233, 253 (2006). Whenever an appointing authority chooses to bypass a higher-ranked candidate, it immediately must file a written statement of its reasons for appointing a candidate with a lower score. G. L. c. 31, § 27. Such an appointment will not be effective until the written statement has been "received by" the administrator.[7]

---

[7] General Laws c. 31, § 27, provides:

"Except as provided otherwise by [G. L. c. 31, § 15,] if the administrator certifies from an eligible list the names of three persons who are qualified for and willing to accept appointment, the appointing authority, pursuant to the civil service law and rules, may appoint only from among such persons. If such eligible list contains the names of fewer than three such persons, the appointing authority may appoint from among those persons or may request authorization to make a provisional appointment pursuant to [§§ 12, 13, and 14].

"If an appointing authority makes an original or promotional appointment from a certification of any qualified person other than the qualified person whose name appears highest, and the person whose name is highest is willing to accept such appointment, the appointing authority shall immediately file with the administrator a written statement of his reasons for appointing the person whose name was not highest. Such an appointment of a person whose name was not highest shall be effective only

3. <u>Discussion</u>. The question before us is whether the administrator permissibly delegated its function under G. L. c. 31, § 27, to appointing authorities.

We review questions of statutory interpretation de novo. <u>Sheehan</u> v. <u>Weaver</u>, 467 Mass. 734, 737 (2014). "Our primary duty in interpreting a statute is 'to effectuate the intent of the Legislature in enacting it.'" <u>Water Dep't of Fairhaven</u> v. <u>Department of Envtl. Protection</u>, 455 Mass. 740, 744 (2010), quoting <u>International Org. of Masters</u> v. <u>Woods Hole, Martha's Vineyard & Nantucket S.S. Auth</u>., 392 Mass. 811, 813 (1984). We begin our analysis with the statutory language. "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent." <u>Thurdin</u> v. <u>SEI Boston, LLC</u>, 452 Mass. 436, 444 (2008). Accordingly, where the statutory language is clear, we must "give effect to the plain and ordinary meaning of the language" (citation omitted), <u>Morales</u> v. <u>Morales</u>, 464 Mass. 507, 511 (2013), "in light of the aim of the Legislature," unless to do so would produce an "absurd" or "illogical" result. <u>Sullivan</u> v. <u>Brookline</u>, 435 Mass. 353, 360 (2001).

a. <u>HRD's authority to delegate</u>. Pursuant to G. L. c. 31,

---

when such statement of reasons has been received by the administrator. The administrator shall make such statement available for public inspection at the office of the department."

§ 5 (l), the administrator has the power "[t]o delegate the administrative functions of the civil service system, so far as practicable, to the various state agencies and cities and towns of the [C]ommonwealth."  The plain language of G. L. c. 31, § 5 (l) thus affords the administrator broad authority to delegate its administrative functions, with one limitation:  any such delegation must be "practicable."  "Practicable" commonly is defined as "[c]apable of being effected, done, or put into practice; feasible."  See American Heritage Dictionary 1421 (3d ed. 1992).  Thus, in order to determine whether HRD's delegation was permissible, we assess whether the delegation was feasible.

b.  Receipt of bypass statement.  In reaching his conclusion that HRD's delegation of receipt of bypass reasons was impermissible, the Superior Court judge interpreted the statutory requirement that the statement of such reasons must have "been received" by the administrator, G. L. c. 31, § 27, as also requiring the administrator to conduct a substantive review of the appointing authority's statement of reasons for the bypass, and to approve those reasons, in order for an appointment or promotion to become effective.  The judge determined that it was not practicable for an appointing authority to conduct a review of its own reasons for a bypass.

On appeal, Malloch contends similarly that HRD's delegation was not practicable, because G. L. c. 31, § 27, requires the

administrator to receive and approve the appointing authority's reasons for a bypass promotion, and it is not feasible for an appointing authority to approve its own reasons for its decision to bypass a higher-ranked candidate.  Because we conclude that the statutory language means precisely what it says -- that the administrator must have "received" the statement of bypass reasons before an appointment becomes effective -- we do not agree that HRD's delegation to municipalities, as appointing authorities, was not "practicable."

In ordinary usage, "receive" means "to take into one's possession (something offered or delivered)"; "to have (something) bestowed [or] conferred"; "to have delivered or brought to one"; and "to get or be informed of."  Webster's New Universal Unabridged Dictionary 1610 (1996).  The statutory language thus indicates that the Legislature did not intend to require the administrator to approve a list of bypass reasons. To the contrary, other definitions of "receive" include "to accept from another"; "to hold, bear, or contain"; and "to accept as authoritative, valid, true, or approved," id., suggesting that the administrator is to accept an appointing authority's reasons, as stated, rather than to approve them. This reading of the administrator's duty to accept and hold the statement of reasons is supported by subsequent language in the same paragraph of the statute.  General Laws c. 31, § 27,

provides also that an appointing authority must "immediately file" its written statement of reasons for a bypass with the administrator, and that the administrator must make such statements available for public inspection.

We read G. L. c. 31, § 27, to require only receipt of bypass reasons by the administrator, and not approval thereof. To conclude otherwise in essence would require that we "read into [the] statute a provision which the Legislature did not see fit to put there, [and to] add words that the Legislature had an option to, but chose not to include."  See Massachusetts Insurers Insolvency Fund v. Smith, 458 Mass. 561, 567 (2010), citing General Elec. Co. v. Department of Envtl. Protection, 429 Mass. 798, 803 (1999).  The Legislature's choice is clear when we "read the statute as a whole."  Care & Protection of Jamison, 467 Mass. 269, 276 (2014).  In other parts of the civil service statute, where the Legislature intended the administrator to approve or authorize the actions of the appointing authority, it stated so explicitly.  See Commonwealth v. Williamson, 462 Mass. 676, 682 (2012) ("Where the Legislature used different language in different paragraphs of the same statute, it intended different meanings").

For instance, the Legislature gave the administrator the power and duty to "approve or disapprove specifications and qualifications submitted by an appointing authority . . . for

any civil service position."[8]  G. L. c. 31, § 5 (c).  The
Legislature provided the administrator with similar approval
authority for provisional promotions and appointments.  Under
G. L. c. 31, § 15, which governs provisional promotions, "[a]n
appointing authority may, with the approval of the administrator
. . . make a provisional promotion of a civil service employee
in one title to the next higher title in the same departmental
unit."  See Kelleher v. Personnel Adm'r of the Dep't of
Personnel Admin., 421 Mass. 382, 385-386 (1995) (construing
level of scrutiny that should be used by administrator in
approving provisional appointments).  Similarly, under G. L.
c. 31, § 12, which governs provisional appointments, "[a]n
appointing authority may make a provisional appointment to a
position in the official service with the authorization of the
administrator."  See Kelleher v. Personnel Adm'r of the Dep't of
Personnel Admin., supra at 386.

Moreover, it is the role of the commission, rather than of
the administrator, to adjudicate bypass appeals in civil service

---

[8] Under G. L. c. 31, § 5 (c), after identifying the
qualifications and abilities necessary to perform the job, the
"appointing authority may request . . . that the Personnel
Administrator approve certain qualifications for a specific
position."  The appointing authority then may rely on those
qualifications, in addition to the entrance requirements
established by the administrator for that position, in making
appointment decisions.  See Charton & Groll, A Civil Service
Action:  Hiring, Promotion, and Discipline at the Civil Service
Commission (1999).

appointments, in part by reviewing statements of reasons for a bypass and determining whether there is a "reasonable justification, 'sufficiently supported by credible evidence,'" for the bypass. See Police Dep't of Boston v. Kavaleski, 463 Mass. 680, 688 (2012) (Kavaleski), quoting Brackett v. Civil Serv. Comm'n, 447 Mass. 233, 241 (2006). We interpret separate sections of statutes as a whole, to produce internal consistency, Roberts v. Enterprise Rent-A-Car Co. of Boston, 438 Mass. 187, 194 (2002), citing Acting Supt. of Bournewood Hosp. v. Baker, 431 Mass. 101, 104 (2000), and to give a "rational and workable effect." Roberts v. Enterprise Rent-A-Car Co. of Boston, supra at 192, citing School Comm. of Gloucester v. Gloucester, 324 Mass. 209, 212 (1949).

The legislative history in enacting G. L. c. 31, § 27, further supports our reading. General Laws c. 31, § 27, originally was codified by St. 1945, c. 704, § 4, as G. L. c. 31, § 15 (c).[9] Before the law was codified in 1945, the Report of the Special Commission Studying Civil Service Laws, Rules and Regulations (Jan. 1943), 1943 House Doc. No. 1333, at 5, recommended that "when the appointing authority names some one other than the person who is number one on the civil service

_____

[9] Subsequently, the provision was recodified by St. 1978, c. 393, § 11, and became G. L. c. 31, § 27. It was most recently amended by St. 1985, c. 527, § 16. None of the changes since 1945 made material modifications to this section.

list, the appointing official shall give the Director of Civil Service[10] his reasons for passing over the person or persons at the head of the list.  These reasons shall be in writing . . . [and are] to be available for examination by the person or persons passed over."  Another legislative report, Report of the Special Recess Commission Studying Civil Service Laws, Rules and Regulations (Jan. 1945), 1945 House Doc. No. 1675, at 6, similarly proposed that appointing authorities "be required to give reasons in writing for passing over persons at the head of civil service lists."  The Legislature adopted these recommendations when it enacted St. 1945, c. 704, § 4.  Thus, the purpose behind the administrator's receipt of bypass reasons was not to require the administrator's review, but rather to make those reasons known and available in writing for bypassed candidates to examine in deciding whether to pursue an appeal. See 1943 House Doc. No. 1333, at 5.

In sum, we see no support for Malloch's contention that the administrator is required to conduct an independent review of a written statement of reasons where the Legislature did not plainly state its intention that the administrator do so, and explicitly awarded such adjudicative duties to the commission.

---

[10] The personnel administrator previously was referred to as the Director of Civil Service.  See St. 1974, c. 835, § 1 (striking out "director of civil service" and replacing with "the personnel administrator").

See Staveley v. Lowell, 71 Mass. App. Ct. 400, 407 (2008) ("the administrator's powers of delegation must be viewed in the context of the Legislature's decision to charge the commission with responsibility for smooth and consistent operation of [the civil service] system").

c.  Delegation of functions under G. L. c. 31, § 27. Nothing in the language of G. L. c. 31, § 27, explicitly prohibits delegation of functions by the administrator, nor does G. L. c. 31, § 5 (l), contain language prohibiting such delegation.  See Doe v. Superintendent of Schs. of Worcester, 421 Mass. 117, 128 (1995) ("If the Legislature intentionally omits language from a statute, no court can supply it").

Conceding that the statutory language does not prohibit delegation of the administrator's authority under G. L. c. 31, § 27, Malloch relies on language in MacHenry v. Civil Serv. Comm'n, 40 Mass. App. Ct. 632, 635 (1996) (MacHenry), in support of her argument that the administrator may not delegate its function to "receive" statements of bypass reasons.  Malloch argues that MacHenry holds that G. L. c. 31, § 27, requires the administrator to review and approve statements of reasons for a bypass.  We do not agree.

In MacHenry, the issue before the Appeals Court was whether the statutory scheme authorized the administrator to undertake to conduct a review of a statement of bypass reasons, or whether

an appointment became effective "merely upon receipt by [the administrator] of the statement of reasons." Id. at 634. The court noted several earlier decisions of this court and the Appeals Court where the administrator's role had "not [been] confined to mere 'receipt' but [had been] seen [in dicta] to involve acceptance or approval of the statement of reasons," and concluded that "the Legislature's presumptive knowledge of those decisions" indicated that this interpretation was correct. Id. at 635. The court did not address whether G. L. c. 31, § 27, required the administrator to approve statements of bypass reasons, but suggested that it was reasonable to conclude the statute authorized the administrator to approve or affirm such statements.[11] MacHenry, supra at 635. The court based its

_____

[11] The plaintiff in MacHenry v. Civil Serv. Comm'n, 40 Mass. App. Ct. 632, 635 (1996) (MacHenry) had been promoted to the position of police lieutenant after a board of selectmen chose to bypass two higher-scoring individuals on the certification list. Id. at 632-633. The administrator rejected their written statements of reasons for the bypass because the selectmen had relied on the plaintiff's educational record, which already had been considered in determining his civil service score, and requested that the selectmen provide additional, more detailed reasons for the bypass. Id. at 633. Instead, they chose to promote the second-ranked candidate on the certification list, and filed detailed reasons with the administrator explaining their decision for having done so. Id. The administrator accepted those reasons and the plaintiff, who had assumed the duties of a lieutenant, was returned to his position as sergeant.

The plaintiff appealed to the commission, arguing that his promotion had become effective upon the administrator's receipt of the statement of bypass reasons, rather than being dependent

conclusion, in large part, on language in Bielawski v. Personnel Adm'r of the Div. of Personnel Admin., 422 Mass. 459, 466 (1996) (Bielawski). Like MacHenry, Bielawski did not hold that G. L. c. 31, § 27, required the administrator's review,[12] nor did the other cases cited in MacHenry, supra. See Goldblatt v. Corporation Counsel of Boston, 360 Mass. 660, 662 (1971); Flynn v. Civil Serv. Comm'n., 15 Mass. App. Ct. 206, 207 (1983).

None of these cases concluded or relied upon a determination that G. L. c. 31, § 27, requires the personnel administrator to review substantively an appointing authority's statement of reasons for a bypass, and we make explicit today

upon its approval of those reasons. The commission concluded that the plaintiff's appointment had never become effective, because the administrator had not approved the bypass reasons, even though the commission stated that the rejected reasons would have been sufficient to support the bypass. The Appeals Court concluded that, while not required to do so, the commission had authority to review, and not merely to accept, a hiring authority's reasons, and therefore there was "no substantial error of law . . . adversely affecting material rights," as required in a petition for certiorari, G. L. c. 249, § 4, the procedural posture before the court. MacHenry, supra at 635-636.

[12] In Bielawski v. Personnel Adm'r of the Div. of Personnel Admin., 422 Mass. 459, 466 (1996), we concluded that a bypassed candidate did not have a property interest in a civil service promotion. We noted, however, that even if the plaintiff had had such a property interest, the requirements of due process would have been satisfied by the "procedural scheme requiring approval by the personnel administrator, allowing an appeal to the commission, and providing for limited judicial review." Id. We did not decide the issue, but made this statement concerning rights that might have been protected by the "procedural scheme requiring approval by the personnel administrator" under a hypothetical scenario.

that the statute contains no such requirement.

We agree with the Appeals Court's conclusion in MacHenry, supra, that the administrator is charged with evaluating the qualifications of applicants for civil service positions according to "basic merit principles," see G. L. c. 31, § 1 (defining term), and must administer, enforce, and comply with civil service law, pursuant to G. L. c. 31.  To ensure that appointments and promotions are made only from a properly certified eligibility list, for instance, the administrator has implemented a rule that no appointment or promotion will be deemed effective until the appointing authority has "notified the administrator in writing that such person has been so appointed or promoted, or that the appointing authority has notified the administrator of its intent to appoint or promote such person, if the appointment or promotion must be delayed due to the scheduling of any training required by statute, or municipal ordinance or by-law, or departmental rule."  Personnel Administration Rules par. 08(3) (effective May 1, 2010).  If at any point, before or after it issues the certification, the administrator finds that the certification (based on an examination conducted by the administrator) was made in error, or a candidate was placed on the eligible list through mistake or fraud, the administrator may revoke the appointment.  Id.

The administrator may, in accordance with his or her duty,

facially examine a written statement of bypass reasons to determine whether the candidate chosen satisfies the requirements for the position (as established by the administrator). Indeed, in MacHenry, the personnel administrator did just that, and found the statement of reasons for a bypass deficient because education, cited as a reason, already had been included in determining the candidates' civil service examination scores, which the administrator assigns. See G. L. c. 31, § 5 (e) (giving personnel administrator purview over civil service examinations). See also Charton & Groll, A Civil Service Action: Hiring, Promotion, and Discipline at the Civil Service Commission (1999); Personnel Administration Rules par. 08(5), supra. The administrator is not, however, obligated to assume an adjudicatory role by substantively reviewing and approving an appointing authority's decision to bypass a candidate.

We therefore conclude that the administrator permissibly could delegate its administrative functions under G. L. c. 31, § 27. Cf. Stavely v. Lowell, 71 Mass. App. Ct. 400. 404-405 (2008) (determining that administrator may, pursuant to G. L. c. 31, § 5 [l], delegate its responsibility to create and administer process that produces civil service eligibility lists).

Malloch makes no additional arguments that delegation to

the appointing authorities was impracticable, and we discern no such bar. According to the record, the administrator trained appointing authorities, provided each authority with a manual detailing acceptable and unacceptable reasons for a bypass, and retained the authority to audit appointing authorities to ensure compliance with basic merit principles. These efforts make it practicable for appointing authorities to create statements of bypass reasons and send them to bypassed candidates, safeguarding basic merit principles, and allowing aggrieved candidates to obtain review by the commission.

d. Application to Malloch's bypass. Having concluded that the administrator's delegation of receipt of the statement of bypass reasons was proper, we turn to a consideration of the commission's decision affirming Malloch's bypass. "We may set aside or modify an agency decision if we determine 'that the substantial rights of any party may have been prejudiced' because the agency decision is in violation of constitutional provisions; in excess of statutory authority or jurisdiction of the agency; based on an error of law; made on unlawful procedure; unsupported by substantial evidence; unwarranted by the facts found by the court on the record as submitted or as amplified; or arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." Rivas v. Chelsea Housing Auth., 464 Mass. 329, 334 (2013), quoting G. L. c. 30A,

§ 14 (7) and citing Attorney Gen. v. Commissioner of Ins., 450 Mass. 311, 318 (2008).

When a bypassed candidate for a civil service position appeals to the commission, "the commission determines 'on the basis of the evidence before it, whether the appointing authority [has] sustained its burden of proving, by a preponderance of the evidence, that there was reasonable justification' for the decision to bypass the candidate." Kavaleski, supra at 688, quoting Brackett v. Civil Serv. Comm'n, 447 Mass. 233, 241 (2006). "[T]he commission owes substantial deference to the appointing authority's exercise of judgment in determining whether there was 'reasonable justification' shown," Beverly v. Civil Serv. Comm'n, 78 Mass. App. Ct. 182, 188 (2010), because "[i]n the task of selecting public employees of skill and integrity, appointing authorities are invested with broad discretion." Cambridge v. Civil Serv. Comm'n, 43 Mass. App. Ct. 300, 304-305 (1997). "Reasonable justification . . . means 'done upon adequate reasons sufficiently supported by credible evidence, when weighed by an unprejudiced mind, guided by common sense and by correct rules of law.'" Kavaleski, supra, quoting Brackett v. Civil Serv. Comm'n, supra. A reviewing court is "bound to accept the findings of fact of the commission's hearing officer, if supported by substantial evidence," Beverly v. Civil Serv. Comm'n, supra, quoting

Leominster v. Stratton, 58 Mass. App. Ct. 726, 728 (2003), and
to give due weight to the experience and knowledge of the
commission in reviewing its decisions. Kavaleski, supra at 689.
A reviewing court does not substitute its own view of the
evidence, but considers whether the commission's decision is
supported by the record and is otherwise not arbitrary,
capricious, or an error of law. See id., and cases cited.

i. Conduct of the interviews. The town's chief of police,
Walter L. Sweeney, Jr., assembled an interview panel consisting
of Hanover police Lieutenant Gregory Nihan, Marshfield police
Captain Michael J. McDonough, and Rockland police Lieutenant
Nicholas Zeoli.[13] In addition to Malloch, the two other
candidates were Officer Thomas Burke, who ranked second on the
certification list, and Officer David Williams, ranked third.

The panel asked each of the three candidates the same ten
interview questions, which the commission deemed "appropriate,
job-related questions gauged to assess a candidate's ability to
perform the duties of a police sergeant."

The panel interviewed the candidates in the order in which
they appeared on the certification list. The panelists took

---

[13] Noting that the panel had been exclusively male, the
chairman of the commission inquired of the town manager whether
he had considered gender an issue, and whether adding a female
interviewer would have been preferable. The town manager
replied "No. I think. . . we've progressed as a society
significantly enough as it relates to those issues that it
didn't occur to me."

notes and rated each candidate on a score sheet using a scale of 1 to 5 in each of four categories: communication skills, poise-presentation, appearance, and response to questions. After the interviews, the panel ranked Burke first, Williams second, and Malloch third, with average interview scores of 5, 4.6, and 3.5, respectively. The panelists compiled their notes into written statements; they delivered their score sheets and statements to Zeoli, who summarized their recommendations and submitted his written summary to the chief of police and the town manager.

As to Malloch's score, panel members commented that she was "nervous"; lacked "command presence"; did not identify herself as a "go-to person" on her shift; and, of particular concern, did not offer a tactical plan in response to a question on a hypothetical shooting, responding merely, we "go in." Citing Malloch's response to a question on her "leadership style," the panel expressed concerns that Malloch's answer that she "tends to ask a lot of questions of officers" indicated a lack of decision-making ability or knowledge about her job.

The panel noted also that Malloch's answer to the question on how to improve the operational efficiency of the department "did not appropriately address the question." The panel's report stated that Malloch responded that she would improve efficiency by "mak[ing] sure the officers went out on the

road."[14]  One of the other two candidates suggested a mentoring program for officers who had passed a "break-in period," and another suggested a revamped field training program for new officers.

In contrast to the positive assessment of Richard's honesty in not giving a response that they "wanted to hear" concerning an atypical answer to another question, none of the interviewers made any comment on candor or forthrightness in Malloch's response.  Indeed, one of the panel members commented that Williams's answer on the efficiency question was "more adequate," because he "talked a lot about officers being on time, being accountable, being held accountable, things like that."

Before the panel delivered its report, Nihan advised Sweeney verbally of the panel's rankings, which he described as "clear cut."  Sweeney then summarized this discussion to the town manager, Troy Clarkson, before they conducted their

---

[14] Before the commission, Malloch elaborated that her

> "answer was that in our department there are some officers who tend to stay in the station for extended periods of time and my way to increase operational efficiency at the department is to make sure those officers leave the station and go to events such as the high school football games and basketball games and perhaps a "Dick's" [store] opening or something like that, but to not stay at the station and watch TV or whatever it is that they're doing for four or five hours an evening.  That's not efficient use of the department's time."

interview of the candidates and before the panel's report had been received; he explained that the panel had considered Burke "far and above the other two people" and as "an outstanding candidate of the three," that "Williams had ranked number two," and that Malloch "had ranked number three."

Sweeney testified to the commission that he was "not surprised" by the panel's ranking. He said Burke "seems to be someone that gets out in front of things and people will tend to follow him," and that he had seen "other officers around the station from time to time" asking Williams questions and that he thought Williams had "given good sound advice." As to Malloch, his general impression was "that she does a good job. She handles her calls in an efficient manner. I think she gives a very good effort every time that she comes to work, but she is not someone that I see as taking a leadership or taking the lead on things[,] more of a person that needs to be reassured sometimes that she's doing the right thing and exhibits a desire to get a collective opinion on things versus just leading the charge."

The chief of police and the town manager then conducted a second round interview with each of the candidates. The interviews lasted between thirty to forty-five minutes. Clarkson asked each candidate two questions: (1) "What is the last book you read?" (Clarkson testified that he asked the

candidate's "favorite book")[15] and (2) "explain the difference between management and leadership?" With regard to the first question, the town manager was attempting to gauge how each candidate would respond to an "out of the box" question. In posing the second question, Clarkson wanted to know if the candidate understood the difference between the administrative and operational duties associated with being a manager as opposed to having the leadership skills to inspire, motivate, and lead others.

Malloch did not offer a "complete response," to the second question, and did not return to the question later in the interview. By contrast, Burke's and Williams's answers convinced the town manager that they understood the difference between management and leadership. Clarkson decided that Burke and Williams were the top two candidates, and Malloch was not ready to serve in a leadership position; Sweeney agreed.

ii. <u>Bypass promotion and commission's review</u>. After

_____

[15] Troy Clarkson, the town manager, testified at the hearing before the commission that Malloch responded that "Watership Down" was her favorite book, and he asked nothing further about her response; he did not remember what Thomas Burke responded; and David Williams responded that he "does not read books for entertainment, but when he has spare time he reads the department policy manual." Clarkson categorized both Malloch's and Burke's responses as "somewhat generic," and stated that he was "looking for the physical and body language response" more than a specific answer. Clarkson considered Williams's answer to display a "willingness to be honest . . . and not try to think of something that we wanted to hear," and testified that he was struck by that honesty.

reviewing the written summary from the interview panel, his own recollection of the candidates' second interviews, and the police chief's recommendation, Clarkson opted to bypass Malloch, and to appoint Burke and Williams. Clarkson noted, "Officer Burke and Officer Williams were far better suited to hold a position of rank and authority in a police department in a paramilitary organization." Clarkson wrote Malloch a bypass letter containing his reasons for the bypass, with instructions on how she could pursue an appeal to the commission.

While expressing some concern about the categories used for ranking the candidates, the "rehearsed and exaggerated" nature of some of the testimony, such as "comments about the nervousness of [Malloch] . . . as compared to the nervousness of one of the male candidates," and the "somewhat uniform nature of the testimony from the [t]own's sequestered witnesses," the commission found that the town had reasonable justification, by a preponderance of the evidence, to bypass Malloch.

iii. Reasons for remand. During argument before us, as she did before the commission and in the Superior Court, Malloch argued that her bypass was based, at least in part, on her gender. "The fundamental purpose of the civil service system is to guard against political considerations, favoritism, and bias in governmental hiring and promotion." Massachusetts Ass'n of Minority Law Enforcement Officers v. Abban, 434 Mass. 256, 260

(2001), citing <u>Cambridge</u> v. <u>Civil Serv. Comm'n</u>, 43 Mass. App.
Ct. 300, 304 (1997). The commission may, and indeed should,
closely scrutinize appointments and promotions "[w]hen there
are, in connection with personnel decisions, overtones of
political control or objectives unrelated to merit standards or
neutrally applied public policy." <u>Cambridge</u> v. <u>Civil Serv.
Comm'n</u>, <u>supra</u>.

Significantly, although it ultimately affirmed Malloch's
bypass, the commission noted that there were a number of factors
in this case supporting a concern that gender bias might have
played a role in the bypass determination, which would be a
violation of basic merit principles.[16] We share the commission's
stated concerns. Where there are overtones of gender bias, any
proffered justification for a bypass must be weighed carefully
to ensure decision making in accordance with basic merit

---

[16] In the commission's written decision, the chair of the
commission stated, "[T]here are certain factors that were of
concern to me in this regard. The [t]own employs only two (2)
female police officers and no female has ever served as a
superior officer. The [t]own assembled two all-male review
interview panels who rated Officer Malloch below her two (2)
male colleagues for reasons partly related to 'poise-
presentation' and lack of 'command presence.' The members of
the review panels met jointly prior to their [c]ommission
testimony, resulting in parts of their testimony (i.e. --
comments about the nervousness of Officer Malloch during her
testimony) sounding rehearsed and exaggerated as compared to the
nervousness of one of the male candidates. Finally the [p]olice
[c]hief's dismissive testimony about Ms. Malloch's recent
reading choice of a novel as a 'book about animals' -- and the
[t]own [m]anager's praise for a male candidate's candor that he
didn't read books -- only reinforced concerns I had. . . ."

principles.  See Massachusetts Ass'n of Minority Law Enforcement
Officers v. Abban, supra at 264.

Because the Superior Court judge, having concluded that
delegation was impermissible, had ordered the matter remanded to
HRD for a "substantive review," he did not conduct a substantive
review, pursuant to G. L. c. 30A, § 14, of the commission's
decision, and had no opportunity to consider whether the
commission's determination that Malloch's gender was not a
factor in her bypass was supported by substantial evidence and
not an abuse of discretion or an error of law.  Moreover, while
the parties contest whether the bypass decision was based on
impermissible reasons, the focus of their arguments before us
was whether the administrator erred in delegating its duty under
G. L. c. 31, § 27, and should have conducted its own substantive
review of the town's asserted reasons for the bypass, precisely
to consider whether the bypass was based on merit principles and
was made "upon adequate reasons sufficiently supported by
credible evidence, when weighed by an unprejudiced mind, guided
by common sense and by correct rules of law."  See Massachusetts
Ass'n of Minority Law Enforcement Officers v. Abban, supra at
260 quoting Selectmen of Wakefield v. Judge of First Dist. Court
of E. Middlesex, 262 Mass. 477, 482 (1928).  Thus, the parties'
briefs do not address in detail the substance of the asserted
errors by the commission.

4. <u>Conclusion</u>. Accordingly, we vacate the judge's order entering judgment on the pleadings and remanding the case to the administrator. The matter is remanded to the Superior Court for a review of the commission's decision on the merits of Malloch's bypass, pursuant to G. L. c. 30A, § 14.

<u>So ordered</u>.